**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Lillian Walters Kaiser,<br><br>Plaintiff,<br><br>vs.<br><br>Imperial Oil of North Dakota, Inc.; and William D. Walters, Jr., individually and as President of Imperial Oil of North Dakota, Inc. and as Co-Trustee of the Lillian Y. Walters Revocable Trust,<br><br>Defendants. | Case No. 1:22-cv-00166 |

---

**ORDER GRANTING MOTIONS TO TRANSFER VENUE**

---

[¶1]     THIS MATTER comes before the Court on a Motion to Dismiss Plaintiff's Complaint or to Transfer Venue filed by Defendant William D. Walters, Jr. ("Walters") on December 5, 2022. Doc. Nos. 16, 21. Defendant Imperial Oil of North Dakota, Inc., ("Imperial Oil") filed a Motion to Dismiss for Failure to State a Claim or in the Alternative to Transfer Venue on December 5, 2022. Doc. Nos. 19, 22.[1] The Plaintiff, Lillian Walters Kaiser ("Kaiser"), filed a consolidated Response on December 27, 2022. Doc. No. 24. Walters filed a Reply on January 9, 2023. Doc. No. 28. Imperial Oil filed a Reply on January 17, 2023. Doc. No. 32.

[¶2]     For the reasons set forth below, Walters' Motion to Transfer Venue (Doc. No. 21) is **GRANTED** and Imperial Oil's alternative Motion to Transfer Venue (Doc. No. 22) is **GRANTED**. The Defendants' Motions to Dismiss for Improper Venue are **DENIED**.

---

[1] Both Defendants have filed Motions to Dismiss for Failure to State a Claim under Rule 12(b)(6) in their Motions to Dismiss. Doc. Nos. 16, 19.

[¶3]    There is also a Motion for Hearing filed by Walters on December 5, 2022. Doc. No. 30. Because the Court is fully apprised of the issues, it finds a hearing is unnecessary. Accordingly, the Motion for hearing is **DENIED**.

## BACKGROUND

[¶4]    The facts are derived from the Complaint. Doc. No. 1. This case involves a family dispute between Walters, the brother, and Kaiser, his sister. Lillian Y. Walters ("Lillian Walters") was their mother, who passed away in 2011. Walters runs Imperial Oil of North Dakota, which is a North Dakota corporation but has its principal place of business in Billings, Montana. Walters moved himself and Imperial Oil to Billings, Montana, sometime in 2011 to be closer to his family. He manages Imperial Oil from there, while making trips to North Dakota to check on their oil wells. Kaiser is the sister. She lives in Lakeway, Texas.  They both own one-third (1/3) of the non-voting common stock of Imperial Oil, with another sister owning the remaining third (1/3) of the non-voting common stock. Walter and Kaiser are also two of three equal beneficiaries of the Lillian Y. Walters Revocable Trust ("Revocable Trust").

[¶5]    Walters owns 100% of the 1,000 voting common stock of Imperial Oil. He is, therefore, the controlling shareholder of Imperial Oil. Walters has been the President of Imperial Oil since at least 2001. Since 2011, Walters has been the sole director of Imperial Oil. He has also acted as Imperial Oil's Treasurer and Secretary. Walters and his immediate family members have received significant financial benefits from their work for Imperial Oil. Walters is a co-trustee of the Revocable Trust along with American State Bank & Trust of Williston.

[¶6]    Imperial Oil owns 404 oil wells. Of those, 403 are in North Dakota. Walters also owns a building in Williston, North Dakota, out of which he runs an office for Imperial Oil. The dispute centers around Kaiser's dissatisfaction with Walters' business decisions and the distributions (or

lack thereof) to the stockholders of Imperial Oil. These decisions were made by Walters in Billings, Montana.

[¶7]    Kaiser has filed a Complaint against Imperial Oil and Walters, individually and as President of Imperial Oil and Co-Trustee of the Lilliam Y Walters Revocable Trust.[2] The Complaint raises eight (8)[3] causes of action: (1) Fraudulent and/or Illegal Conduct Toward Shareholders against Imperial Oil and Walters; (2) Unfairly Prejudicial Conduct Toward Shareholders against Imperial Oil and Walters; (3) Misapplication and/or Waste of Corporate Assets against Imperial Oil and Walters; (4) Breach of Fiduciary Duties by a Corporate Officer against Walters; (5) Breach of Fiduciary Duties by a Corporate Director against Walters; (6) Breach of Fiduciary Duties by a Shareholder in a Closely Held Corporation against Walters; (7) Breach of Trust against Walters; and (8) Unjust Enrichment against Walters.

## DISCUSSION

[¶8]    Both Walters and Imperial Oil have moved to either Dismiss the Complaint for Improper Venue or, alternative, Transfer Venue to the District of Montana. Both Defendants essentially argue venue in North Dakota is improper under 28 U.S.C. § 1391(b) because each of the Defendants' actions occurred exclusively in Billings, Montana. Walters resides in Montana and runs the operations of Imperial Oil from there. Each of the seven claims in the Complaint challenge the corporate decisions made by Walters in Montana.

---

[2] The matter was originally filed in the Eastern Division of the District of North Dakota. Chief Judge Peter D. Welte, without ruling on the current motions to dismiss/transfer venue, decided the Eastern Division was inappropriate and transferred it to the Western Division with a reassignment to the undersigned. Doc. No. 33.
[3] Using Roman numerals, Plaintiff has two claims labeled "Count V" and two claims labeled "Count VI." So there are eight claims in total raised in the Complaint.

[¶9]    The Plaintiff contends venue is proper pursuant to 28 U.S.C. § 1391(b)(2) for numerous reasons. First, Kaiser argues 403 of Imperial Oil's 404 oil wells are located within North Dakota. Second, Kaiser contends the office in Williston, North Dakota, is subject to an improper enrichment claim against Walters. Third, Kaiser avers Imperial Oil was producing oil until 2018 in North Dakota. Fourth, Kaiser argues Imperial Oil used North Dakota financial institutions. Fifth, Kaiser points to the Complaint's allegation that Walters, as a co-trustee of the Revocable Trust, failed to sell Lillian Walters' home in North Dakota at an optimal time and Walters allegedly used it for himself. Sixth, Kaiser argues the property held by the Revocable Trust is situated in North Dakota.[4]

## I.    Propriety of Venue in North Dakota

[¶10]    The Parties agree the venue dispute is governed by 28 U.S.C. § 1391(b)(2), which provides:

> **(b) Venue in general.** – A civil action may be brought in –
>
> *        *        *
>
> > (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated.

28 U.S.C. §1391(b)(2). The question of venue must be decided first and has been described as a "threshold, nonjurisdictional issue." Chevron U.S.A. Inc. v. Env't Prot. Agency, 45 F.4th 380, 385 (D.C. Cir. 2022). In deciding whether venue is proper or improper, the Court must decide whether "the merits should be adjudicated elsewhere." Id.  "Venue concerns the appropriate district court

---

[4] Kaiser also seems to suggest that because Imperial Oil's title is Imperial Oil *of North Dakota*, that itself provides a basis for venue in the District of North Dakota. The title of the corporation is immaterial because the Court looks to the alleged actions of the Defendants when determining whether venue is proper in this District. See Steen v. Murray, 770 F.3d 698, 703 (8th Cir. 2014) (noting the focus of inquiry for venue purposes is on the defendant's relevant activities in the forum state).

in which an action may be filed." Pacer Glob. Logistics, Inc. v. Nat'l Passenger R.R. Corp., 272 F.Supp.2d 784, 788 (E.D. Wis. 2003).

[¶11]   In determining whether venue is proper under Section 1391(b)(2), the Court looks to "the relevant activities of the defendant." Steen v. Murray, 770 F.3d 698, 703 (8th Cir. 2014). Indeed, "the court's focus must be on the relevant activities of the defendant in the forum state, not on the effect of those activities on the plaintiff in the forum state." Id. As for the property clause of Section 1391(b)(2), the Eighth Circuit has held it "appl[ies] only to suits involving property disputes or in rem actions." Id. at 704 (quoting Cold Spring Harbor Lab. V. Ropes & Gray LLP, 762 F. Supp.2d 543, 553 (E.D.N.Y. 2011)).

[¶12]   Turning to Kaiser's arguments, the Court begins by noting Kaiser does not disavow the fact that Walters was in Montana when the business and trust decisions were made. Instead, she focuses on other aspects of the Complaint that tie into North Dakota, but do not place the Defendants' actions in North Dakota. With that in mind, Kaiser first contends venue is proper because 403 of Imperial Oil's 404 oil wells are located in North Dakota. While this may be true, it fails to establish how the Defendants' relevant conduct did not occur in Montana. As alleged in the Complaint, Walters' decisions relating to Imperial Oil and the Revocable Trust occurred almost exclusively in Billings, Montana. This is true even of the decisions relating to the oil wells. Accordingly, the location of Imperial Oil's wells is immaterial to whether the Defendants' actions substantially occurred in the District of North Dakota. See 28 U.S.C. § 1391(b)(2). As alleged in the Complaint, the Defendants' decisions relating to Imperial Oil's wells during the timeframe of the Complaint all occurred in the District of Montana. See Doc. No. 1. The fact that Imperial Oil has wells in North Dakota that provide financial gain to Imperial Oil is not sufficient to warrant

venue in the District of North Dakota because this is not a property dispute or in rem action. See Steen, 770 F.3d at 704.

[¶13]   Second, Kaiser argues the office in Williston is subject to the unjust enrichment claim against the Defendants. While this is alleged in the Complaint, Kaiser's contention here ignores where the alleged illegal activity took place. The decisions relating to the office in Williston were made by Walters while he was in Montana. The Complaint alleges Walters would come to North Dakota to use the office to his benefit. While this is a part of the events or omissions for this claim, it is not a substantial part. His presence in the North Dakota office appears to be ancillary to his decision making in Billings, Montana as it relates to the business of Imperial Oil. Accordingly, his presence at the Williston, North Dakota, office is insufficient to find a substantial part of the Defendants' acts or omissions occurred in the District of North Dakota. See 28 U.S.C. § 1391(b)(2).

[¶14]   Third, Kaiser contends the oil wells were producing oil until 2018. The fact that the oil wells were producing oil is likewise immaterial to the venue determination. This is not a property dispute between the Parties. Rather, the whole Complaint seeks damages for the Defendants' actions as or on behalf of Imperial Oil or in Walters' capacity as co-Trustee of the Revocable Trust. In other words, it is not a proper property dispute or in rem action and venue is not proper in North Dakota simply because the property involved in the suit is in North Dakota. See Steen, 770 F.3d at 704. Indeed, the purportedly illegal acts committed by the Defendants as alleged in the Complaint by-and-large occurred in the District of Montana. Accordingly, the allegation that Imperial Oil's wells were producing until 2018 has no bearing on whether venue is proper in the District of North Dakota.

[¶15]   Fourth, Kaiser argues the use of North Dakota financial institutions constitutes a substantial part of the events occurring in North Dakota. The use of financial institutions does not go to the heart of the questions presented in the Complaint. This case involves a shareholder dispute, a trust dispute, and numerous business relationship disputes between Walters and Kaiser. Each dispute concerns Walters' handling of Imperial Oil's distributions and his handling of the Revocable Trust as co-trustee. A vast majority of these decisions were made in Montana by Walters. The financial institutions are immaterial as to the Defendants' actions because his alleged wrongful conduct occurred almost exclusively in Billings, Montana. See Steen, 770 F.3d at 703 (finding the Southern District of Iowa was improper venue when the plaintiff challenged legal services done in Nebraska relating to land in the Southern District of Iowa).

[¶16]   Fifth, Kaiser argues Walters' failure to sell Lillian Walters' home benefitted him because he would use it when he traveled to Williston, making venue proper in North Dakota. Perhaps Walters was provided a benefit in the use of the home, but this is not a substantial part of the claims. Apart from the alleged occasional personal use of the home, the claims all relate to decisions regarding the trust and Imperial Oil that were made by Walters in Montana. This is true for both the Breach of Trust and Unjust Enrichment claims. The record reflects nearly all of Walters' decisions occurred in his requisite capacity as co-trustee or president of Imperial Oil while he was in Montana.

[¶17]   Finally, relying on the property clause of 28 U.S.C. § 1391(b)(2), Kaiser argues the property subject to the Revocable Trust is situated in North Dakota.[5] The property provision of 28

---

[5] Plaintiff also argues (1) the Complaint alleges Walters inappropriately loaned money from Imperial Oil to two other companies owned by the Defendant that were North Dakota entities; and (2) Walters failed to appropriately discovery an Imperial Oil Employee's embezzlement. The Employee was in Williston. Much like the other claims, the Plaintiff does not allege any of the

U.S.C. § 1391(b)(2) only applies to property disputes or in rem actions. See Steen, 770 F.3d 698 at 704. This case is neither a property a dispute nor an in rem action. This case is a family dispute over how Walters is running Imperial Oil and its distributions as well has his actions as co-trustee of the revocable trust. While each of the claims necessarily involves property, the claims themselves are not disputes over the property. They are disputes over Walters' actions related to the property.

[¶18]   In all of this, the Court finds Steen instructive. In Steen, there was a venue dispute between the Parties. 770 F.3d at 700. Plaintiff filed a complaint in the Southern District of Iowa against the defendant for legal malpractice. Id.   The defendant had drafted a contract relating to the sale of plaintiffs' land in the Southern District of Iowa to prevent the bank from foreclosing on their farm. Id. Pursuant to the agreement, the buyer would purchase 80 acres of plaintiffs' land and lease another 331 acres for six years. Id. At the expiration of the six-year lease, the buyer had an option to purchase the leased property. Id. The contract was supposed to include "a first option to purchase or a first right of refusal" but the plaintiffs claimed it was drafted with "an unrestricted option in favor of" the buyer. Id. The district court ultimately transferred the case to the District of Nebraska. Id.

[¶19]   The Eighth Circuit affirmed the transfer, concluding the Southern District of Iowa was an improper venue. Id. at 702-704. The Court held all the alleged wrongful acts by the defendants occurred outside the Southern District of Iowa, that is, in Nebraska. Id. at 704. The Eighth Circuit rejected the argument that some of the actions forming the attorney-client relationship occurred in the Southern District of Iowa to support the claim venue was proper there. Id. The Eighth Circuit

Defendant's alleged wrongful conduct occurred in North Dakota. The Court is equally unpersuaded by these arguments as to the others.

concluded the malpractice was in the drafting of the agreement by the lawyers in Nebraska, even though there was a factual connection to the Southern District of Iowa. Id. In addition, the Eighth Circuit concluded that, even though the malpractice claim centered on the plaintiffs' property, since it was not a property dispute or in rem action, venue was not proper under 28 U.S.C. § 1391(b)(2)'s property clause. See Steen, 770 F.3d at 704.

[¶20]   This case is similar to Steen. Even though there is a connection to the District of North Dakota, virtually all the alleged wrongful conduct by the Defendants occurred in the District of Montana.  The Defendants' actions in North Dakota are few and insubstantial for venue purposes. Indeed, most of the Defendants' actions occurred within the District of Montana, in Billings. See id. at 703. In other words, because the Defendants' alleged wrongful conduct took place almost exclusively in Montana, venue in the District of North Dakota is improper. Id. at 704 ("Because the malpractice—the alleged wrongful activity—occurred exclusively in the District of Nebraska, neither district court erred in concluding that the Southern District of Iowa was an improper venue.").

[¶21]   Based upon the foregoing and after reviewing the entire record in this matter, the Court concludes venue is improper in the District of North Dakota under 28 U.S.C. § 1391(b)(2).

## II.   Dismissal or Transfer of Venue

[¶22]   Now that the Court has determined venue is improper, it must decide whether to dismiss the Complaint or transfer the matter to the District of Montana. Once a Court finds venue is improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). While the Court has discretion to dismiss a complaint upon a finding of improper venue, generally the interest of justice requires

a transfer of venue instead of dismissal. <u>Rare Breed Triggers, LLC v. Garland</u>, ___ F.Supp.3d___, Case No. 3:22-cv-00085, 2022 WL 17175089, at *7 (D.N.D. Nov. 4, 2022).

[¶23]   The Court has reviewed the entire record in this case and concludes a transfer of venue is the appropriate remedy under the circumstances. Justice and economy drive the Court's decision to transfer venue to the District of Montana, where the case should have been brought in the first instance. The Plaintiff has not shown that a substantial part of the events occurred in North Dakota. Indeed, an overwhelming majority of the Defendants' actions occurred in Billings, Montana. Transfer also avoids the redundancy of requiring Kaiser to refile the entire action in the District of Montana, when the District of Montana is the only discernable district in which this case could be brought. For these reasons, the Court will transfer this proceeding to the United States District Court for the District of Montana.[6]

## CONCLUSION

[¶24]   Accordingly, for the reasons set forth above, the Defendants Motions to Transfer Venue (Doc. Nos. 21, 22) are **GRANTED**. Their Motions to Dismiss for Improper Venue are **DENIED**. Because the Court is fully apprised of the issues, it finds a hearing is unnecessary. Accordingly, the Motion for Hearing (Doc. No. 30) is **DENIED**.

---

[6] Even if venue was proper in the District of North Dakota, the Court would still grant the Motion to Transfer Venue pursuant to 28 U.S.C. § 1404, which provides, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Changing venue to the District of Montana would convenience Defendants since they reside in Billings Montana. It would not pose an inconvenience for Plaintiff as she does not reside in North Dakota, but in Texas. As for convenience of the witnesses, by and large, the actions occurred in Montana and the witnesses and evidence will be predominantly there. While some witnesses will be from North Dakota, the inconvenience they would suffer would be minimal. Finally, as discussed above, it is in the interest of justice to transfer venue to the District of Montana due to the significant number of alleged actions that occurred in Montana and only minimal actions of the Defendants occurred in North Dakota. Accordingly, even if venue in District of North Dakota was proper, the Court would still grant the Motion to Transfer Venue pursuant to 28 U.S.C. § 1404.

[¶25]   Accordingly, this case is **TRANSFERRED** to the United States District Court for the District of Montana for all further proceedings and disposition of all remaining motions.

[¶26]   **IT IS SO ORDERED.**

DATED May 24, 2023.

Daniel M. Traynor, District Judge
United States District Court