IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| LILLIAN WALTERS KAISER,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>IMPERIAL OIL OF NORTH<br>DAKOTA and WILLIAM D.<br>WALTERS<br><br>　　　　　Defendants. | CV 23-59-BLG-SPW<br><br><br>ORDER |

Before the Court is Plaintiff Lillian Kaiser's ("Kaiser") Motion for Leave to File Amended Complaint and Jury Demand (Doc. 122), Defendant William Walters's ("Walters") Motion to Dismiss Plaintiff's Complaint (Doc. 16), Defendant Imperial Oil of North Dakota's ("Imperial Oil") Motion to Dismiss for Failure to State a Claim (Doc. 19), and Kaiser's Motion for Involuntary Dissolution of Imperial Oil of North Dakota (Doc. 86).  For the reasons below, the Court grants in part and denies in Kaiser's Motion for Leave to Amend (Doc. 122), grants in part and denies in Part Walters's Motion to Dismiss (Doc. 16), grants in part and denies in part Imperial Oil's Motion to Dismiss (Doc. 19), and denies Kaiser's Motion for Involuntary Dissolution (Doc. 86).

1

## I.  Facts and Background

At its core, this case is a dispute between siblings about how one sibling runs the corporation that comprises their collective inheritance.

Kaiser, Walters, and Carrie Walters Smith ("Smith") are the children of Lillian Y. Walters ("Lillian"). (*See* Doc. 17 at 2).  Smith did not join this suit. (Doc. 1 ¶ 5).  Lillian established a trust, the Lillian Y. Walters Revocable Trust (the "Trust"), and named Walters, Kaiser, and Smith as the beneficiaries. (Doc. 1 ¶¶ 1, 4, 5).  Walters and American State Bank & Trust of Williston are the co-trustees of the Trust. (*Id.* ¶¶ 1, 4).  Walters, Kaiser, and Smith each inherited an ownership interest in Imperial Oil in 2011, which seems to have been disbursed through the Trust. (*See id.* ¶ 26; Doc. 116 at 14–15).

Imperial Oil is an oil and gas corporation incorporated in North Dakota with its principal office in Billings, Montana. (*Id.* ¶ 3).  It derives almost all its revenue from oil and gas operations in North Dakota. (*Id.*)  Imperial Oil employs Walters as the president and sole officer and employs his sons and one grandson. (*Id.* ¶¶ 4, 13).  Walters owns 100% of the voting shares of Imperial Oil. (*Id.* ¶ 4).  The non-voting shares are divided equally between Walters, Kaiser, and Smith. (*Id.* ¶¶ 1, 4–5).

The finances of Walters and Imperial Oil seem intertwined.  Imperial Oil loaned money to two companies in which Walters has an ownership interest: Walters Petroleum Enterprises, L.L.C., a North Dakota corporation in which Walters has a

2

50% ownership, and The Mineral Mart, Inc., a North Dakota corporation which Walters owns in whole or in part. (*Id.* ¶¶ 14–15). Imperial Oil has paid and possibly continues to pay rent for space in a building that Walters owns. (*Id.* ¶ 16). In 2011, Walters moved Imperial Oil's principal office from North Dakota to Billings, Montana, supposedly to be closer to Walters's home and family. (*Id.* ¶ 30). In 2019, Imperial Oil financed the purchase of Walters's home in Billings. (*Id.* ¶ 17).

Kaiser originally filed her Complaint in the U.S. District Court for the District of North Dakota on October 14, 2022, pursuant to the court's diversity jurisdiction. (Doc 1). Kaiser alleged various violations of the North Dakota Business Corporations Act, N.D. Cent. Code § 10-19.1, as well as breach of trust under Title 59 of the North Dakota Century Code. (Doc. 1 ¶¶ 45–83). The crux of Kaiser's Complaint is that Walters has used his position as director of Imperial Oil and co-trustee of the Trust to benefit himself, his children, and his grandchildren to the detriment of his sisters. In the Complaint, Kaiser alleges eight counts against Walters, six of which apply to his role as president, director, and sole voting shareholder of Imperial Oil (collectively, "Shareholder Claims"): Fraudulent and/or Illegal Conduct Toward Shareholders (Count I); Unfairly Prejudicial Conduct Toward Shareholders (Count II); Misapplication and/or Waste of Corporate Assets (Count III); Breach of Fiduciary Duties by a Corporate Officer (Count IV); Breach of Fiduciary Duties by a Corporate Director (Count V); Breach of Fiduciary Duties

by a Shareholder in a Closely Held Corporation (Count VI), and unjust enrichment in Walters's role at Imperial Oil (Count VIII).  Kaiser also alleges Counts I, II, and III against Imperial Oil.  Kaiser further alleges that, as co-trustee of the Trust, Walters breached his duty to administer the trust in good faith (Count VII) and unjustly enriched himself to the detriment of Kaiser (Count VIII) (collectively, "Trust Claims").[1]  (Doc. 1 ¶¶ 45–82).

On December 5, 2022, Imperial Oil and Walters each moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for improper venue under Federal Rule of Civil Procedure 12(b)(3) (collectively "Motions to Dismiss").  (Docs. 16, 19).  In the alternative, Defendants each sought to transfer venue to the District of Montana.  (Docs. 16, 19, 21, 22).  On May 24, 2023, Judge Daniel Traynor of the District of North Dakota found venue in North Dakota improper, granted the motions to transfer, and transferred the case to this Court pursuant to 28 U.S.C. § 1406(a).  (Doc. 51 (granting Docs. 21, 22)).

Subsequently, Kaiser filed a Motion to Appoint Receiver (Doc. 74), a Motion for a Hearing on the Motion to Appoint Receiver (Doc. 84), a Motion for Involuntary Dissolution of Imperial Oil of North Dakota (Doc. 86), and the present Motion for

---

1. Kaiser incorrectly numbers the Counts in her Complaint.  The Court uses the numbering of Counts as set out in the Proposed Amended Complaint.

Leave to File Amended Complaint. Defendants oppose each motion. (Docs. 79, 96, 98, 99, 124).

Additionally, Defendants filed two joint motions: a Motion to Stay Discovery (Doc. 37) and a Motion to Strike. (Doc. 105). Kaiser opposes both these motions. (Docs. 44, 107).

In the Proposed Amended Complaint ("PAC"), Kaiser seeks to add an additional count for exemplary damages and to provide additional facts supporting that claim ("Exemplary Damages Claim") (Count IX). (*See* Doc. 122 ¶¶ 85–91).

Kaiser requests the following legal and equitable relief in the PAC: (1) monetary damages; (2) appointment of a receiver over Imperial Oil; (3) distributions, dissolution, or the sale of Imperial Oil to a third party; (4) reasonable expenses; (5) exemplary damages, and (6) any other relief the Court deems just and proper. (*Id.* ¶ 91).

## II.    Legal Standards

### A.    *Motion to Amend*

A party may amend its pleading once as a matter of course within the time limits set in Federal Rule of Civil Procedure 15(a)(1). If a party seeks to amend their complaint after the Rule 15(a)(1) deadline, the party must have the opposing party's written consent or the leave of the court. Fed. R. Civ. P. 15(a)(2). Such leave should be given freely "when justice so requires." *Id.*

B.    *Motion to Dismiss*

A Rule 12(b)(6) motion tests the legal sufficiency of a pleading.  Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive Rule 12(b)(6) motion, the pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if the pleading alleges enough facts to draw a reasonable inference that the accused is liable. *Id.*  Though the pleading does not need to provide detailed factual allegations, it cannot merely assert legal conclusions. *Twombly*, 550 U.S. at 555.

When ruling on a Rule 12(b)(6) motion, the Court must accept the complaint's well-pled factual allegations as true and construe them in the light most favorable to the non-movant. *See Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 850 (9th Cir. 2012).  Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## III.    Discussion

As the parties dispute which law governs the various issues before the Court, the Court must first establish the governing law.  Because granting a motion to amend changes the operative pleading, the Court must then address Kaiser's Motion

6

to Amend. *See Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1518 (10th Cir. 1991). The Court will then address Defendants' Motions to Dismiss, starting with whether Smith is a necessary party to this suit, and then turning to the merits of the motions.

### A.  Governing Law

A federal court sitting in diversity applies state substantive law and federal procedural law. *See In re County of Orange*, 784 F.3d 520, 523–24 (9th Cir. 2015). Additionally, when a case has been transferred to another district, the receiving court must decide which state's substantive law applies.  *See Jarrett v. Terrell*, No. 21-55263, 2022 WL 1056645, at *1 (9th Cir. Apr. 8, 2022).  Here, the Court first will decide which state's substantive law applies.  Then the Court will decide whether each issue—motions to amend and motions to join—is procedural, and therefore governed by Federal Rules of Civil Procedure 15 or 19, respectively, or substantive, and therefore governed by the applicable state law.

### 1.  North Dakota Substantive Law Governs

When the court sitting in diversity grants a motion to transfer from a district court in one state to a district court in another state, which state's substantive law applies depends on the basis for transfer.  If the case is transferred under § 1406(a) for improper venue, the court receiving the case applies the substantive law of the state in which it sits, including its choice-of-law rules. *Jarrett*, 2022 WL 1056645, at *1.

7

Because this case was transferred to this district from the District of North Dakota under 28 U.S.C. § 1406(a), the Court uses Montana choice-of-laws principles to determine which state's substantive law governs. *See id.*

The Montana Supreme Court has adopted "most significant relationship test" from § 6 of the Restatement (Second) of Conflict of Laws. *See Phillips v. General Motors Corp.*, 995 P.2d 1002, 1004 (Mont. 2000) (torts); *Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 400 (Mont. 2008) (contractual choice-of-law provisions); *Hutchins v. Hutchins*, 430 P.3d 502, 508–09 (Mont. 2018) (choice-of-law provisions in premarital agreements); *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, 709 (Mont. 2003) (contract disputes); *Talbot v. WMK-Davis, LLC*, 380 P.3d 823, 825 (Mont. 2016) (workers compensation subrogation liens). Under the most significant relationship test, the Court first looks at whether there is a statutory directive as to the choice-of-law. Restatement (Second) of Conflict of Laws § 6(1) (Am. L. Inst. (Oct. 2023 update)). If a statutory directive exists, the court applies the statute. *Talbot*, 380 P.3d at 828–29.

When no statutory directive exists, the court considers the initial presumption of the "specific section of the Restatement that is applicable to the case" in light of the principles outlined in § 6(2). *Buckles v. BH Flowtest, Inc.*, 476 P.3d 422, 424, 426 (Mont. 2020). The seven § 6 principles include (1) the needs of the interstate and international systems, (2) "the relevant polices of the forum" and (3) the relevant

8

policies of other interested states, (4) the protection of justified expectations, (5) "the basic policies underlying the particular field of law," (6) "certainty, predictability and uniformity of result, and (7) "ease in the determination and application of the law to be applied."  Restatement (Second) of Conflict of Laws § 6.

The Court has identified three states with a potential interest in the application of their substantive law: Montana, the forum state; North Dakota, the state of incorporation of Imperial Oil and the governing state law designated in the trust; and Texas, Kaiser's domicile, and thus where Kaiser likely felt any wrong done by Defendants to her. *See Buckles*, 476 P.3d at 425 (citing Restatement (Second) of Conflicts of Law § 146, cmts. e, f) (explaining that the court should "appraise the relative interests of the states involved in the determination of the particular issue.")

### a.  *Shareholder Claims*

As to the Shareholder Claims, Montana has a statutory directive governing choice-of-law for a corporation's internal affairs.  Under § 35-14-1501(1)(a) of the Montana Code, the law of a foreign corporation's state of incorporation governs disputes over the corporation's internal affairs.  The internal affairs of a corporation include the relations among the corporation and its shareholders, directors, officers, or agents.  Restatement (Second) of Conflict of Laws § 313, cmt. a.  Imperial Oil is incorporated in the state of North Dakota, so the Court will use North Dakota substantive law as to the Shareholder Claims.  (*See* Doc. 1 ¶ 3).

9

b.     *Trust Claims*

As to the Trusts Claims, Montana also has a statutory directive: Montana Code Annotated § 72-38-107 provides that the interpretation of trusts is governed by the law of the jurisdiction designated in the terms of a trust, unless the designation of a foreign state law is contrary to a strong public policy in Montana.   The Trust instrument designates North Dakota law as the governing law for meaning and administration (Doc. 18-1 at 37), and nothing in the parties' filings indicates that any provision of North Dakota law is violative of Montana public policy.   Accordingly, the Court will apply North Dakota substantive law to the Trust Claims.

c.     *Exemplary Damages for Shareholder Claims*

As to the choice of law governing exemplary damages for the Shareholder Claims, there is no applicable statute in the Montana Code, so the Court looks to the § 6 factors and the section of the Second Restatement concerning damages in suits against officers and corporations—§ 309—to assess the applicable law for Walters's and Imperial Oil's liability.   *See Slattery v. Bower*, 924 F.2d 6, 9 (1st Cir. 1991); Restatement (Second) of Conflicts of Law § 309 cmt. a (explaining that the law selected by application of § 309 for directors will also apply to liability of the corporation).   Under § 309, the Court uses the local law of the state of incorporation, North Dakota, unless analysis under § 6 finds that another state has a more

significant relationship. Restatement (Second) of Conflicts of Law §§ 309, 309 cmt. a. The Court finds the § 6 factors also favor the application of North Dakota law.

The first § 6 factor courts consider is "the needs of the interstate and international systems." This factor seeks "harmonious relations between states and [the] facilitat[ion of] commercial intercourse between them" and favors the "adoption of the same choice-of-law rules." *Id.* § 6, cmt. d. Because North Dakota, Montana, and Texas all follow the Restatement's "most significant relationship" test for resolving choice-of-law questions, this factor does not weigh in favor of any state. *See Phillips*, 995 P.2d at 1007, 1009; *Nodak Mut. Ins. Co. v. Wamsley*, 687 N.W.2d 226, 231 (N.D. 2004); *Gutierrez v. Collins*, 583 S.W.2d 312, 318–19 (Tex. 1979).

The second and third § 6 factors require a comparison of the competing policies and interests of Montana, North Dakota, and Texas law. The Court finds these factors slightly favor North Dakota law. North Dakota is interested in its law governing damages for a defendant corporation incorporated in North Dakota. North Dakota also has significant interest in the conduct of corporations that extract natural resources within its boundaries and whose business operations are predominantly centered in North Dakota. (*See* Doc. 124 at 10). While Montana has some interest because Imperial Oil has its principal place of business in Montana and many of the events in question occurred in Montana, the Court finds significant that Montana law

11

yields its interests in the internal affairs of a business to North Dakota when a company is incorporated in North Dakota. *See* Mont. Code Ann. § 35-14-1501(1)(a) ("The law of the jurisdiction of formation of a foreign corporation governs: (a) the internal affairs of the foreign corporation; and (b) the interest holder liability of its shareholders."). Last, Texas is interested in its law applying to redress harm done to a Texas citizen, especially when, as here, the harm is felt in Texas. The Court finds North Dakota has a stronger interest in the application of its laws because North Dakota's long-term interest in regulating the conduct of corporations that extract natural resources within its borders trumps Texas's short-term interest in allocating loss to Texas citizens. *See* William F. Baxter, *Choice of Law and the Federal System*, 16 Stanford L. Rev. 1, 13 (1962).

The fourth § 6 factor considers the justified expectations of the parties. This factor favors application of North Dakota law because Imperial Oil is incorporated in North Dakota and its business operations are centered in North Dakota. Though Walters might have some expectation that Montana law would apply because Imperial Oil's principal place of business is in Montana, he has admitted that North Dakota law likely governs. (*See* Doc. 124 at 10). Walters and Imperial Oil would likely not predict the application of Texas law, nor did they argue as much, because Texas is not the state of incorporation, the location of the principal place of business, nor the place where Imperial Oil's business operations are centered.

The fifth § 6 factor considers the basic expectations underlying the particular field of law.  Comment h to § 6(2) states:

> This factor is of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules. In such instances, there is good reason for the court to apply the local law of that state which will best achieve the basic policy, or policies, underlying the particular field of law involved.

Restatement (Second) of Conflicts of Law § 6 cmt. h.  When analyzing this factor, Montana courts seem to favor the law of the state whose statute provides the broadest application.  *See Burchett v. MasTec N. Am., Inc.*, 93 P.3d 1247, 1252 (Mont. 2004). Montana, North Dakota, and Texas have different laws governing exemplary and punitive damages.  Mont. Code Ann § 27-1-221(1); N.D. Cent. Code § 32-03.2-11(1); Tex. Rev. Civ. Code Ann. § 41.003 (West 2023).   After examining the relevant statutes, the Court finds this factor slightly favors Texas law because its statute has broader applicability and thus provides more protection for injured shareholders than the respective Montana and North Dakota statutes.  The Texas statute allows exemplary damages for fraud, malice, and gross negligence, while the Montana statute limits punitive damages to cases of actual fraud and actual malice. Additionally, while the North Dakota statute offers punitive damages for fraud, malice, or oppression, the North Dakota statute includes more procedural hurdles than its Texas counterpart.

The final two § 6 factors require the Court to consider certainty, predictability, and uniformity of result, as well as ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6(2)(f), (g). These factors have the most application in contracts cases, where the "parties are likely to give advance thought to the legal consequences of their transactions." *Id.* § 6, cmt. i. It is unlikely that Walters considered the exemplary damages statutes of the relevant states prior to allegedly engaging in oppressive acts toward Kaiser, nor did he argue as much. Thus, these factors do not weigh in favor of the application of any state's law.

In sum, the presumption in § 309 favors the application of North Dakota law, and the § 6 factors likewise slightly favor the application of North Dakota law. The Court will therefore apply North Dakota law in considering damages in the Shareholder Claims.

### d.   *Exemplary Damages for Trust Claims*

As to Walters's liability for exemplary damages for the Trust Claims, there is no governing Montana statute. There is no Second Restatement section specifically dealing with damages in trust claims, but the Court finds persuasive that, in questions of choice of law for trust administration, the Second Restatement favors using the law of the state in which a trust is to be administered for movables and the law of

the situs state in cases of trusts appointing an interest in real property—here, North

Dakota. *See, e.g., id.* §§ 267–290.

When applied to the exemplary damages in the Trust Claims, the § 6 factors

weigh in favor of North Dakota law.  First, the "harmonious relations" factor does

not weigh in favor of any state because all three states have adopted the Second

Restatement.   Second, the policy/interest factors weigh slightly in favor of

application of North Dakota law.  Montana has no interest in its law governing the

Trust, as there was likely no harm felt in Montana, and the real property is located

in North Dakota.   North Dakota has an interest in its law governing both the

administration of trusts and the damages stemming from wrongful administration of

the trust because the Trust instrument designates North Dakota law and the real

property held by the Trust is located in North Dakota.  Texas has a slight interest in

its law applying because Kaiser felt the alleged harm in Texas, but its loss allocation

interest is eclipsed by North Dakota's interest in its law governing a North Dakota

trust through which real property in North Dakota is disbursed. *See* Baxter, *supra,*

at 15.  Third, the "justified expectations" factor weighs heavily in favor of North

Dakota law.   The settlor, Lillian Walters, designated North Dakota law as the

governing law, and North Dakota expects that its law will govern real property

located within North Dakota.  Fourth, the "expectations underlying the particular

field of law" factor is neutral.  Last, the "uniformity" factor favors North Dakota law

because the settlor "gave advanced thought to the legal consequences of [her] transaction[]" and named North Dakota as the governing state law.  Restatement (Second) of Conflict of Laws § 6, cmt. i.

Accordingly, North Dakota substantive law governs the Shareholder Claims, the Trust Claims, and the Exemplary Damages Claims for both the Shareholder Claims and Trust Claims.

### 2.     Federal Rules of Civil Procedure 15 and 19 Govern

Having determined that North Dakota law governs all the substantive issues, the Court now turns to whether federal or state law applies to amending the pleadings and joinder.  First, as to the motion to amend to add exemplary damages, it considers whether North Dakota Century Code § 32-03.2-11(1) or Federal Rule of Civil Procedure 15 controls.  Then, as to joinder of a shareholder, the Court analyzes whether to apply North Dakota Century Code § 10-19.1-115(8) or Federal Rule of Civil Procedure 19.

The Court finds that Rule 15 governs the motion to amend, and Rule 19 governs joinder.

### a.     Rule 15(a)(2) and § 32-03.2-11(1)

Section 32-03.2-11(1) governs motions in which a party amends the pleadings to include a claim for exemplary damages.  Rule 15 governs amendment of a complaint in federal court.  As to whether § 32-03.2-11(1) or Rule 15(a)(2) applies

to the instant motion, Defendants seem to concede that Rule 15(a)(2) applies.  (Doc. 124 at 7).   However, they suggest that the Court should consider the standards in Rule 15 and § 32-03.2-11(1) together "to determine the answer to the essential question of whether 'justice so requires' that a plaintiff be given leave to amend their complaint to seek punitive damages under a particular state statute."  (*Id.* at 7 n.2). On reply, Kaiser points out that courts in the District of North Dakota have addressed the application of § 32-03.2-11(1) and Rule 15 and found that Rule 15 governs. (Doc. 125 at 2–4).

This Court previously conducted an extensive analysis of the application of Rule 15 and § 32-03.2-11(1) and found that Rule 15 applies.  *See Otto v. Newfield Expl. Co.*, No. CV-15-66-BLG, 2017 WL 3616712, at *1–3 (D. Mont. Feb. 22, 2017).   Courts in the District of North Dakota likewise have answered this question in favor of the applicability of Rule 15; none have used § 32-03.2-11(1) to guide their Rule 15 analysis.  *See, e.g., First Int'l Bank & Tr. v. Oasis Petroleum N. Am. LLC*, 587 F. Supp. 3d 896, 901 (D.N.D. 2020); *Pyle v. A.H. Bennett Co.*, No. 3:21-cv-159, 2023 WL 6887212, at *8 (D.N.D. Oct. 19, 2023) (collecting cases).   The Court is persuaded both by its prior holding and by the recent decisions of courts in

the District of North Dakota and finds that Rule 15 solely governs the question of whether Kaiser may amend her pleadings.[2]

> b.      Rule 19 and § 10-19.1-115(8)

Section 10-19.1-115(8) does not require a plaintiff to join the other shareholders in an action proceeding under § 10-19.1-115(1)–(7). Rule 19 governs mandatory joinder in federal court. The Supreme Court has explained generally that, in diversity cases, Rule 19 determines issues of joinder and whether the court should proceed in the absence of an interested party, while state substantive law determines the interest of the non-party. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 n.22 (1968).[3]

Federal courts sitting in diversity apply state substantive law and federal procedural rules, but the line between procedural and substantive law is often hazy. *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Erie R.R. Co. v.*

---

2. In response to the parties' disagreement about whether Kaiser had to file an affidavit with her motion (Doc. 123 at 4; Doc. 124 at 3), the Court notes that, as Rule 15 governs, Kaiser was not required to file the affidavits required by N.D. Cent. Code § 32-03.2-11(1). *See First Int'l Bank & Trust*, No. 1:18-cv-067, 2020 WL 12957754, at *8 ("Unlike N.D.C.C. 32-03.2-11(1), Rule 15 does not require an amendment to be supported by affidavits showing the factual basis for the claim.").

3. The Court notes that, if Kaiser's claims are derivative, Federal Rule of Procedure 23.1, and not Rule 19, controls, as Rule 19 governs mandatory joinder of required parties in federal cases *except* class actions, derivative suits, and unincorporated associations. Fed. R. Civ. P. 19(d); *see* 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §§ 1626; 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* Rule 23.1 n.1 (explaining that the 1966 drafters likely neglected to include Rule 23.1 as an exception when splitting Rule 23.1 from Rule 23(d)). In Section C below, the Court finds Counts I and II are properly pled as direct claims and dismisses Count III as an improperly pled derivative claim. Thus, only direct claims remain, and Rule 19 governs issues of joinder.

*Tompkins*, 304 U.S. 64, 92 (1938) (Reed, J., concurring). A state procedural rule, though undeniably "procedural" in the ordinary sense of the term, may exist to influence substantive outcomes. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 419–20 (2010) (Stevens, J., concurring) (citation omitted). Thus, when a state chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice. *Id.* at 420.

In *Shady Grove*, Justice Stevens formulated a two-step framework to negotiate this "thorny area."[4] *Id.* at 421. When there is a conflict between federal procedural rules and state substantive rules, the court must first determine whether the federal rule is "sufficiently broad to control the issue." *Goldberg v. Pac. Indem. Co.*, 627 F.3d 752, 755 (9th Cir. 2010) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749 (1980)). If the federal rule is sufficiently broad to create a direct conflict, the court proceeds to the second step: whether the federal rule violates the Rules Enabling Act, which usually involves analysis of the legislative history of the state law to determine if the state rule was part of the state's "definition of its rights or remedies."[5] *Shady Grove*, 559 U.S. at 422, 432. Because "one can often argue the

4. Justice Stevens' concurrence controls, as it concurred on the narrowest grounds. *See Albright v. Christensen*, 24 F.4th 1039, 1044 (6th Cir. 2022); *Otto*, 2017 WL 3616712, at *2.
5. The Rules Enabling Act, codified as 28 U.S.C. § 2072, gives the Supreme Court the power to "prescribe general rules of practice and procedure," namely, the Federal Rules of Civil Procedure, as long as those rules do not "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(a), (b).

state rule was *really* some part of the State's definition of its right or remedies[,]" the bar for finding a Rules Enabling Act violation "is a high one." *Id.* at 432 (emphasis in original). The mere possibility that a federal rule would alter a state-created right is insufficient; there must be little doubt. *Id.*

Under the first step of the *Shady Grove* analysis, Rule 19 is sufficiently broad to create a "direct collision" between Rule 19 and § 10-19.1-115(8) because both answer the same question: whether Smith is a necessary party to this suit. Under Rule 19, the Court engages in a multi-step analysis: it must determine whether Smith is a necessary party and, if so, whether she is indispensable to the litigation. Under the plain text of § 10-19.1-115(8), Smith need not be joined.[6] The two rules cannot coexist, so the federal rule controls unless it violates the Rules Enabling Act.

Turning to the second step, the Court holds Rule 19 does not violate the Rules Enabling Act. First, Rule 19 is facially valid under the Rules Enabling Act because it does not affect traditional aspects of substantive law such as the elements Kaiser will have to prove at trial or the burden she must meet to prove them. *See Shady Grove*, 559 U.S. at 426 n.10 ("It will be rare that a federal rule that is facially valid

---

6. Section 10-19.1-115(8) reads, "Proceedings under this section must be brought in a court within the county in which the principal executive office of the corporation is located. It is not necessary to make shareholders parties to the action or proceeding unless relief is sought against them personally."

under [the Rules Enabling Act] will displace a State's definition of its own substantive rights.").

Second, the available history of § 10-19.1-115(8) also does not clearly establish that North Dakota considers the joinder provision of § 10-19.1-115(8) as substantive—or part of its rights and remedies.   The only commentary on the legislative history of § 10-19.1-115 available to the Court is a statement by the North Dakota Supreme Court, suggesting that § 10-19.1-115 was enacted with the evident aim of protecting the dissenting shareholder by providing a broader basis for courts to intervene and provide several equitable remedies.   *See Puklich v. Puklich*, 930 N.W.2d 593, 602 (N.D. 2019) (citing *MT Properties, Inc. v. CMC Real Estate Corp.*, 481 N.W.2d 383, 388 (Minn. App. 1992); *see also* Macdonald, *supra*, at 191.[7] However, *Puklich* pertains to § 10-19.1-115 generally, not to § 10-19.1-115(8) specifically.   The plain text of § 10-19.115(8) neither provides a broader basis for intervention nor a new remedy—it only defines when a shareholder must and must

---

7. The Court notes that § 10-19.1-115 is, in large part, identical to a Minnesota statute amended in 1983. *Compare* N.D. Cent Code § 10-19.1-115 (1986) *with* Minn. Stat. § 302A.751 (1986); *see also* Charles Macdonald, *Corporate Behavior and the Minority Shareholder: Contrasting Interpretations of Section 10-19.1-115 of the North Dakota Century Code*, 62 N.D. L. Rev. 155, 157, 191 (1986).   Both statutes were passed in a "'new wave' in state corporation laws" promulgated by the American Bar Association. *Joseph Edward Olson, A Statutory Elixir for the Oppression Malady*, 36 Mercer L. Rev. 627, 630 (1985).   The drafter of the Minnesota statute notes the vulnerable position of the minority shareholder in a close corporation: because they lack substantive rights to participate in management but cannot sell their shares, their capital can be effectively confiscated by the majority shareholder. *Id.* at 628.   The 1983 Minnesota amendments were passed to provide a "broad equitable remedy" for this kind of shareholder mistreatment and to prevent minority shareholder abuse, and § 10-19.1-115 seems to have been passed for a similar reason. *Id.* at 631; *see Puklich*, 930 N.W.2d at 602.

not be joined.  Thus, any reference to legislative intent in *Puklich* is not illuminating in a *Shady Grove* analysis.

Without any applicable legislative history, the Court cannot conclude the high bar for finding a Rules Enabling Act violation is met.  Rule 19 therefore governs. The Court's conclusion is supported by the Supreme Court's statement that Rule 19 generally determines issues of joinder in diversity cases.  *See Provident Tradesmens*, 390 U.S. at 125 n.22.

Accordingly, the Court holds Rule 19 does not violate the Rules Enabling Act because it is facially valid and § 10-19.1-115(8)'s legislative history does not clearly show § 10-19.1-115(8) is part of North Dakota's definition of its rights and remedies.

B.     *Kaiser's Motion to Amend*

Having decided that Rule 15(a)(2) governs Kaiser's motion to amend, the Court next considers whether Kaiser may amend her Complaint.

Kaiser argues that the Court should grant her motion because Rule 15(a)(2) instructs the Court to "freely give leave" to amend the pleadings, and justice is better served by allowing her to amend her pleadings to add a cause of action for exemplary damages.  (Doc. 123 at 2).

In response, Defendants argue that the Court should deny Kaiser's Motion because the PAC fails to state a plausible claim of entitlement to exemplary damages, so Kaiser's proposed amendment is futile under North Dakota substantive

law. (Doc. 124 at 3, 11). They claim that, under North Dakota law, a claim for exemplary damages is futile unless the plaintiff proves by "'clear and convincing evidence' that the defendant is guilty of 'oppression, fraud, or actual malice.'" (*Id.* at 12). As the PAC contains "no facts ... demonstrat[ing] that Walters acted oppressively" under North Dakota law, the amendments are futile. (*Id.* at 14). Finally, Walters argues that Kaiser's Complaint fails to state a claim for relief because she incorrectly pleaded Counts I-III as direct claims, instead of as derivative claims. (*Id.* at 15–16). Further, because she failed to join Smith as a necessary party, amendment would be futile, and the remainder of Kaiser's causes of action should be dismissed. (*Id.* at 15–16).

On reply, Kaiser argues that, under Rule 15(a)(2), the Court should follow the Ninth Circuit's guidance that "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." (Doc. 125 at 4 (citing *Upper Mo. Waterkeeper v. U.S. Env't Prot. Agency*, No. CV-16-52, 2018 WL 11418417, at *3 (D. Mont. Feb. 2, 2018))). Kaiser further argues that her proposed amendments are not futile because they "fall[] well within the liberal pleading standard of Rules 12(b)(6) and 15." (*Id.* at 6). She finally asserts that North Dakota law allows exemplary damages in cases of "oppression, fraud, or actual malice," and that she has alleged sufficient facts in support of exemplary damages. (*Id.* at 8–9).

23

In deciding whether to grant a party leave to amend under Rule 15(a)(2), a court considers five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Pfau v. Mortenson*, 858 F. Supp. 2d 1150, 1162 (D. Mont. 2012) (quoting *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004)). However, "[f]utility alone can justify the denial of a motion for leave to amend." *Nunes*, 375 F.3d at 808; *see also Coronavirus Reporter v. Apple*, 85 F.4th 948, 958 (9th Cir. 2023) ("[A] district court acts within its discretion to deny leave to amend when amendment would be futile.") (internal quotations and punctuation omitted).

The "proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Nordyke v. King*, 644 F.3d 776, 788 (9th Cir. 2011), *on reh'g en banc*, 681 F.3d 1041 (9th Cir. 2012).

The parties only presented arguments as to whether Kaiser's proposed amendments were futile. As futility of amendment is sufficient cause to deny a motion to amend, the Court will only consider whether Defendants have demonstrated that Kaiser's motion to amend is futile.

> 1.    *Kaiser Has Not Pled Fraud with Particularity, so Her PAC May Not Include Allegations of Fraud*

Defendants argue that, as Kaiser has claimed fraud, Kaiser's proposed amendments must meet the higher pleading standard of Federal Rule of Civil

Procedure 9(b).  (Doc. 124 at 14–15).  Kaiser does not object to the application of Rule 9(b) to her accusations of fraud.

When alleging fraud, the party must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "Rule 9(b) applies where a claim is 'grounded in fraud' or 'sound[s] in fraud,' even if fraud is not an essential element of the cause of action." *In Re Finjan Holdings, Inc.*, 58 F.4th 1048, 1057 (quoting *Vess v. Ciba-Geigy Corp, USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)).  "Where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of 9(b)." *Vess*, 317 F.3d at 1105.

To state a claim for fraud with particularity, the allegation must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).  An allegation of fraud must include the "who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess*, 317 F.3d at 1105).  The particularity requirement under Rule 9(b) is governed by federal law, but whether the elements of fraud have been pled sufficiently is a matter of state law. *Vess*, 317 F.3d at 1103.

When particular allegations of fraud are insufficiently pled under Rule 9(b), "a district court should disregard those [allegations] or strip them from the claim." *Id.* (internal quotation marks omitted). The court then examines the remaining allegations to determine whether they state a claim. *Id.*

Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice of the alleged fraud in order to allow defendants to defend the charge and to "deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs"; (2) to protect the reputation of those who would be harmed as a result of the alleged fraud; and (3) to "prohibit plaintiffs from unilaterally imposing upon the court, the parties, and society enormous social and economic costs absent some factual basis." *Kearns*, 567 F.3d at 1125 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)) (internal punctuation omitted).

Section 32-03.2-11(1) provides for exemplary damages in cases of oppression, actual malice, *or* fraud, so fraud is not a required element of a claim for exemplary damages. Accordingly, Rule 9(b) only applies to any specific allegations in the PAC of fraud or descriptions of fraudulent conduct. *See Dyson, Inc. v. Garry Vacuum, LLC*, No. CV 10-01626, 2010 WL 11595882, at *5 (C.D. Cal. Jul. 19, 2010).

The North Dakota Century Code does not provide any guidance as to what constitutes fraud under § 32-03.2-11(1), so the Court looks to North Dakota caselaw and the North Dakota Jury Instructions.

The jury instructions and North Dakota caselaw define fraud as "(1) the suggestion as fact of that which is not true by one who does not believe it to be true; (2) the assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true; (3) the suppression of a fact by one who is bound to disclose it, or who gives information that is likely to mislead because that fact was not communicated; or (4) a promise made without any intention of performing."[8] N.D. Jury Instructions – Civil § 72.12 (2023); *Raaum Estates by and through Raaum v. Murex Petroleum Corp.*, No. 4:14-cv-024, 2017 WL 2870070, at *26 (D.N.D. Jul. 5, 2017) (adopting the North Dakota Jury Instructions – Civil § 72.12 definition of fraud).  Given the lack of guidance in the North Dakota Century Code, the Court will adopt this as its definition of fraud.

Kaiser alleges throughout the PAC that Walters engaged in fraudulent conduct.  (*See* Doc. 122 ¶¶ 46, 47, 86, 88, 89, 91).  She points to three specific examples.  First, Imperial Oil and Walters "were deceitful and untruthful about what corporate records were available in an effort to conceal them from Plaintiff,

---

8. The Court notes that, in considering fraud and deceit under North Dakota law, the Eighth Circuit found that claims grounded in either fraud or deceit must meet the heightened pleading requirements of Rule 9(b).  *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1076 (8th Cir. 2018).

including information about the profitability of Imperial Oil." (*Id.* ¶ 86). Kaiser alleges that this occurred "both before and during this lawsuit." (*Id.*). She does not allege specific statements Walters made or how Walters attempted to conceal the corporate records. Second, Imperial Oil and Walters "were deceitful to Plaintiff about what dividends she and others would receive from their ownership interests in Imperial Oil." (*Id.*). Kaiser alleges this occurred "both before and during this lawsuit." (*Id.*). She does not allege how Walters deceived her about dividends or provide a specific example. Finally, Kaiser alleges that Imperial Oil and Walters "have engaged in numerous instances of ... misrepresentation in response to Plaintiff's and her representatives' requests for action, information, and documents[.]" (*Id.*). Kaiser does not provide a specific time in which Walters engaged in misrepresentation or a provide a specific example of Walters's misrepresentation. (*Id.*).

All three examples meet the definition of a claim for fraud because they are suggestions or assertions of fact which were not true, and were allegedly made by Walters, who either had reason to believe the assertions were untrue or did not believe that the suggestions or assertions were true.

The question left before the Court is whether these allegations were pled with particularly, as required by Rule 9(b). The Court finds that Kaiser fails to plead fraud with particularity because she only generally describes Walters's actions, and

does not provide Walters with the "who, what, when, where, and how of the misconduct charged." *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citing *Vess*, 317 F.3d at 1106). A general statement that fraudulent conduct occurred "before and during this lawsuit" is insufficient to satisfy the "when" standard. Additionally, general allegations of Walters being deceitful and untruthful about the availability of corporate records and what dividends Kaiser would receive do not suffice as to "how" Walters defrauded Kaiser. Kaiser's lack of specificity makes responding to the allegation nothing more than a guessing game for Defendants.

The Court accordingly strikes the references to fraud preceding paragraph 47 and in paragraphs 47, 48, 86, 88, 89, 90 and 91, as well as the PAC's allegations of deceit, untruthfulness, or misrepresentation in paragraph 86. *See Vess*, 317 F.3d at 1105.

   2. *Kaiser Has Adequately Alleged an Underlying Claim Under Rule 8*

After stripping all allegations of fraud from the PAC, the Court considers Kaiser's PAC under Rule 15(a)(2) and whether her claims are legally sufficient under Federal Rule of Civil Procedure 8.

A claim for relief under Rule 8(a) must contain a "short and plain statement" that includes "a statement of a claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1), (2). "Dismissal under Rule 12(b)(6) is proper only when the

complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (citing *Mendiondo*, 521 F.3d at 1104). Thus, for amended pleadings to meet the futility factor, the amendment must both have a cognizable legal theory and allege sufficient facts supporting the cognizable legal theory.

Kaiser seeks to amend her Complaint to assert a claim for exemplary and other damages under North Dakota Century Code § 32-03.2-11.[9]  (Doc. 122 ¶¶ 85–91). To assert a cognizable legal theory under North Dakota Century Code § 32-03.2-11, Kaiser must adequately allege (1) an underlying claim that Defendants breached their obligation to Kaiser and (2) in the breach of their obligation to Kaiser, Defendants engaged in oppression or actual malice. The Court finds Kaiser has claimed both a cognizable legal theory and alleged sufficient facts supporting that theory, so her amendment is not futile.

> a.     *Kaiser Has Properly Asserted a Cognizable Legal Theory*

Section 32-03.2-11(1) provides for exemplary damages when a "defendant has been guilty . . . of oppression, fraud, or actual malice." It does not create an independent cause of action; rather, it must accompany an underlying claim. *See N. Bottling Co., Inc. v. Henry's Foods, Inc.*, 474 F. Supp. 3d 1016, 1029 (D.N.D. 2020)

---

9. Kaiser suggests that "other law" might also apply to her claim for exemplary damages. (Doc. 122 at 35). Because Kaiser does not specify the source of the other law, the Court only considers whether Kaiser's pleading is sufficient under § 32-03.2-11.

("Because [the plaintiff] has not adequately alleged an underlying claim, . . . [the] claims [under § 32-03.2-11] must fail."). In deciding whether to grant leave to amend to add a cause of action under § 32-03.2-11(1), a federal court should not require the plaintiff to "prove" her claim because doing so would "usurp the fact-finding province of the jury and undermine the plaintiff['s] right to a jury trial on the punitive damages claim." *Olson v. Ford Motor Co.*, No. A4-04-102, 2005 WL 3271945, at *2 (D.N.D. Nov. 29, 2005); *see also Weather Modification LLC*, 340 F.R.D. at 325 (explaining that, as Rule 15 controls, the court would not consider the parties' arguments as to the adequacy of evidence that it would consider if the motion was decided under the procedure of § 32-03.2-11.1).

For the purposes of exemplary damages, the term "oppression" means "subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights." *Harwood State Bank v. Charon*, 466 N.W.2d 601, 604 (N.D. 1991). "Malice" means "an intent with ill will or wrongful motive to harass, annoy or injure another person." *FleetPride, Inc. v. Inland Truck Parts Co.*, No. 3:13-CV-91, 2016 WL 4257435, at *1 (D.N.D. Feb. 16, 2016) (internal citation and quotation marks omitted); *see also Ingalls v. Paul Revere Life Ins. Group*, 561 N.W.2d 273, 285 (N.D. 1997) ("The term malice and maliciously import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act.") (internal emphases omitted).

Kaiser does not assert exemplary damages as a freestanding claim; rather, her claims of exemplary damages for oppression and malice accompany the underlying claims in Counts I through VIII. She thus properly alleges a cognizable legal theory of § 32-03.2-11(1).

Defendants argue that Kaiser's underlying claim is legally insufficient as to Counts I, II, and III, and so she is not entitled to compensatory damages on those Counts. (Doc. 124 at 15 (citing N.D. Cent. Code § 32-03.2-11(4), Docs. 16, 19)). However, as explained below, Kaiser properly pled Counts I and II as direct claims, and the Court dismisses Count III as an improperly pled derivative claim. *See infra* Section C. Accordingly, Kaiser asserts an underlying cognizable legal theory as to Counts I, II, IV, V, VI, VII, and VIII.

### b.  *Kaiser Alleges Sufficient Facts to Support Her Claim*

The Court now finds that Kaiser also alleged sufficient facts to support her legal theory for exemplary damages. Kaiser makes the following relevant allegations of fact:

- Imperial Oil paid Walters $3,840,582.49 in salary between 2011 and 2021. (Doc. 122 ¶ 12). Imperial Oil also employs two of Walters's sons and one of his grandchildren. (*Id.* at ¶ 13).
- Imperial Oil issued "substantial" loans to at least two companies owned by Walters and his wife; (*Id.* ¶¶ 14–15).
- Imperial Oil paid rent for Walters's office space in Williston, North Dakota in a building that is owned by Walters. (*Id.* ¶ 16).
- Imperial Oil financed the purchase of Walters's home on terms favorable to Walters. (*Id.* ¶ 17).

- Imperial Oil has been consistently profitable, and, by 2022, had acquired over $18 million cash on hand. (*Id.* ¶ 19). Imperial Oil did not invest that money and declined to pay any dividends between 2011 and 2022. (*Id.* ¶¶ 19, 22–23). Maintaining so much cash on hand and failing to pay dividends could subject Imperial Oil to IRS penalties. (*Id.* ¶ 27 (citing 26 U.S.C. §§ 531, 532; 26 CFR § 1.533-1(a)(1))).

- Imperial Oil did not pay any dividends to shareholders between 2011 and 2022, when, in response to threats of legal action, it paid out over $7 million in two distributions. (*Id.* ¶ 23).

- Part of the Trust property was the house in which Lillian lived and an adjacent lot. (*Id.* ¶ 38). As co-trustee of the Trust, Walters used this Trust property for his own use and for the use of his companies (not Imperial Oil). (*Id.*). While the house and lot could have been sold as early as 2011, Walters did not sell them until 2019. (*Id.*)

- Under the terms of the Trust, Walters was to pay Kaiser a "shore-up" in excess of $200,000. (*Id.* ¶ 43). Walters did not pay Kaiser the "shore-up" until 2018, despite promises to do so. (*Id.*).

- Walters did not distribute the non-voting shares in Imperial Oil until 2019. (*Id.* ¶ 44).

- Walters has been deceitful with Kaiser about what dividends the nonvoting shareholders would receive from their ownership interests in Imperial Oil. (*Id.* ¶ 86).

- Since litigation began in this case, Walters and Imperial Oil have failed to make sufficient distributions to shareholders and have engaged in numerous instances of stonewalling, delay tactics, and misrepresentation to Kaiser in response to her requests for action, information, and documents. (*Id.*).

- As co-trustee, Walters maliciously and willfully failed to distribute the Trust assets, including personal jewelry of Kaiser's mother and other sentimental items, for 11 years and only distributed the Trust assets under threat of legal action. (*Id.*).

As a legal basis for amending her Complaint to include a claim for exemplary damages, Kaiser asserts that the facts show Walters leveraged his control over both Imperial Oil and the Trust to deny her the benefits of her inheritance and access to

information and documents. (*Id.* ¶ 86). Kaiser also asserts that Walters engaged in the described conduct to oppress her and with actual malice toward her. (*Id.* ¶ 88).

Defendants argue that Kaiser did not provide sufficient material factual allegations relevant to exemplary damages and instead makes "conclusory allegations." (Doc. 124 at 12, 14). Defendants assert that, when stripped of "imputations and speculation," the facts do not support an amendment for exemplary damages. (*Id.* at 14).

On reply, Kaiser asserts that the PAC contains numerous facts supporting her claim for exemplary damages under § 32-03.2-11(1). (Doc. 125 at 7–9).

In accepting all Kaiser's material allegations of fact as true and construing all facts in the light most favorable to Kaiser, the Court concludes that she has provided sufficient factual basis to support a finding that Walters has engaged in oppression or actual malice as trustee of the Trust. While Walters eventually abided by the terms of the Trust, Kaiser provides factual allegations showing that Walters benefitted from his position as co-trustee without distributing Trust property. For example, a jury could find that Walters's failure to pay Kaiser her "shore-up" under the terms of the Trust for seven years amounts to cruel and unjust hardship in conscious disregard of Kaiser's rights—oppression—or that Walters acted with ill will or wrongful motive to harass, annoy, or injure Kaiser—actual malice. *See Harwood State Bank*, 466 N.W.2d at 604; *FleetPride, Inc.*, 2016 WL 4257435, at

34

\*1.  A jury likewise could find that Walters's personal and business use of Trust property for years and his failure to distribute personal and sentimental items under the terms of the Trust instrument could constitute oppression or actual malice.

The Court also finds Kaiser alleges sufficient material facts for exemplary damages for Walters and Imperial Oil in the Shareholder Claims.  Based on the facts alleged, and construing them in favor of Plaintiff, a jury could find that Walters received millions of dollars of benefits from his role at Imperial Oil while simultaneously denying the other nonvoting shareholders millions of dollars in dividends.  When Kaiser, as a shareholder, requested to view the documents, Walters and Imperial Oil refused to provide her with information she was entitled to.  A jury could find that these actions subjected Kaiser to cruel and unjust hardship in conscious disregard of her rights—oppression—or that Walters acted with ill will or wrongful motive to harass, annoy, or injure Kaiser—actual malice.  *See Harwood State Bank*, 466 N.W.2d at 604; *FleetPride, Inc.*, 2016 WL 4257435, at \*1.  At the least, Kaiser has alleged sufficient facts that a jury could conclude Walters's and Imperial Oil's motives were improper or unjustifiable.  *See Stoner*, 446 N.W.2d at 754 (actual malice can be found when actions are improper or unjustifiable).

Additionally, whether Walters and Imperial Oil engaged in oppression or actual malice is a question for the jury, not for the Court.  *See Dahlen v. Landis*, 314 N.W.2d 63, 69 (N.D. 1981) ("Whether the defendant was guilty of oppression, fraud

35

or malice ... is primarily a question for the jury."). As such, the jury, not the Court, must weigh the evidence and determine whether Walters and Imperial Oil acted to oppress Kaiser.

Accordingly, the Court finds Kaiser's PAC is not futile, and, as justice so requires, the Court gives leave for Kaiser to amend her Complaint subject to the restrictions stated above. The PAC is now the operative pleading in this case.

C.    *Motion to Dismiss*

The Court now considers the motions to dismiss filed by Walters and Imperial Oil. It first addresses whether the pending Motions to Dismiss should be dismissed as moot. It next considers whether Smith must be joined as a necessary and indispensable party. It last addresses the merits of the pending motions.

1.    *Mootness of Pending Motions*

"The filing of an amended complaint generally moots a pending motion to dismiss unless the amended complaint is substantially identical to the original complaint." *Zimmerman v. PeaceHealth*, No. 3:22-cv-05960, 2023 WL 7413650, at *3 (W.D. Wash. Nov. 9. 2023) (internal citations omitted). Any subsequent motion should be directed at the amended complaint. *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1518 (10th Cir. 1991). An amended complaint that contains an additional cause of action is "substantially identical" to the original complaint. *Oliver v. Alcoa, Inc.*, No. C16-0741, 2016 WL 4734310, at *2 n.3 (W.D. Wash, Sept. 12, 2016).

A pending motion to dismiss is not always mooted by the amended complaint. *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1476 (3d ed. 1998) (Jul. 7, 2023 update). "[A] court simply may consider the motion as being addressed to the amended pleading" when the amended pleadings contain the same defects raised in the original motion, rather than mooting the pending motions to dismiss." 6 Wright & Miller, *supra* § 1476. "[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending." 6 Wright & Miller, *supra* § 1476.

The PAC is substantially identical to the Complaint. It contains the same eight counts, the same underlying facts, and the same defects. The additional count for exemplary damages and the additional facts underlying that count do not necessitate Defendants filing new motions to dismiss. *See* 6 Wright & Miller *supra* § 1476. Instead of mooting the pending Motions to Dismiss (Docs. 16, 19), the Court will consider them as being addressed to the amended pleadings. *See Davis*, 929 F.2d at 1517.

### 2.    *Joinder of Smith*

The Court now addresses whether Smith—the third sibling, Trust beneficiary, -and non-voting shareholder of Imperial Oil—must be joined under Rule 19. The parties acknowledge that Smith is not party to this litigation. (Doc. 1 ¶ 5; Doc. 17 at 23).

Kaiser argues that Smith is neither a necessary nor indispensable party as to the Trust Claims because all the relevant Trust assets have been distributed. (Doc. 116 at 17–19). Further, because any remedies Kaiser seeks for breach of trust are legal, the Trust property is not directly at issue. (*Id.* at 19). Kaiser also argues that, as to the Shareholder Claims, North Dakota law allows the Court to grant Smith equitable relief in her absence, so Smith is protected from prejudice. (*Id.* at 8–9 (citing N.D. Cent. Code § 10-19.1-121(1))).

Defendants argue that Smith is both a necessary and indispensable party under Rule 19(a) for both the Trust Claims and the Shareholder Claims. (Doc. 115 at 17). They generally assert that, if Smith is not joined, Defendants could be subject to multiple actions if Smith later decides to file her own lawsuit. *Id.* They also assert that Smith's joinder in this case would destroy diversity and the Court's jurisdiction. (*Id.* at 7). As to the Trust Claims, Defendants argue that the remedies Kaiser seeks are broad and include restoration of Trust assets, requiring that Smith be joined. (Doc. 115 at 19–20). Defendants assert that, until December 2021, the Trust owned all nonvoting shares of Imperial Oil. (*Id.* at 21). Thus, any claims arising before December 2021 are breach of trust claims disguised as corporate claims and, for the reasons stated previously, Smith must be joined. (*Id.* at 21–22). As to the Shareholder Claims, they argue that Smith's interests will be prejudiced as a shareholder if she is not joined. (*Id.* at 9). Defendants conclude that, as Smith is a

required party, the Court should dismiss this case or tailor the remedy to avoid prejudice to Smith by ordering Imperial Oil to buy Kaiser's shares at fair value. (*Id.* at 18 (citing N.D. Cent. Code § 10-19.31-115(4))).

In determining whether a party should be joined under Rule 19, a court engages in a three-step analysis. The court first determines whether the absent party is necessary. If so, the court analyzes the feasibility of joining the absent party. If the absent party is necessary and cannot be joined, "the court must determine whether the party is indispensable so that in equity and good conscience the suit should be dismissed." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (internal quotation marks omitted).

> a.    *Step 1: Whether the Absent Party is Necessary*

A nonparty is necessary and must be joined if either:

> (A)    In [the nonparty]'s absence, the court cannot accord complete relief among existing parties; or
> (B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

Fed. R. Civ. P. 19(a)(1)(A), (B). Complete relief concerns the relief the complaining party requested and is "independent of the question of whether relief is available to the absent party." *Makah Indian Tribe*, 910 F.2d at 558.

The Court finds that Smith is a necessary party for both the Trust Claims and the Shareholder Claims.

As to the Trust Claims, Smith is not a required party under the first prong of Rule 19(a) because Kaiser does not seek any remedies from Smith, and the Court can afford the equitable and legal remedies Kaiser seeks in Smith's absence. However, Smith is a necessary party under the second prong.

Generally, all beneficiaries are required to be parties to a suit to account for or restore trust assets because the interests of the beneficiaries may conflict. *See Walsh v. Centenio*, 692 F.2d 1239, 1243 (9th Cir. 1982); Philip R. Feist et al., *The Law of Trusts and Trustees* § 871 (2023). Additionally, the available remedies under North Dakota law— "compel[ling] the trustee to redress a breach of property by . . . restoring property," "void[ing] an act of the trustee," and "recover[ing] the [trust] property or [its] proceeds,"—allow a court to claw back property from a beneficiary to ensure the trust was properly administered. N.D. Cent. Code § 59-18-01(2). Thus, as a recipient of Trust property, Smith faces a potential loss of her property and cannot protect that risk in her absence from this suit. Additionally, Smith might bring her own suit against Walters for his actions as co-Trustee, subjecting him to multiple suits.

As to the Shareholder Claims, Kaiser's proposed remedies likewise expose Smith's property interest in Imperial Oil to a risk that she cannot defend against in

her absence from this suit. Kaiser requests several remedies, including the dissolution of Imperial Oil, its sale to a third party, the appointment of a receiver, and forced distributions. (Doc. 1 ¶ 83). Kaiser already has moved the Court to involuntarily dissolve Imperial Oil. (Docs. 74). Both involuntary dissolution and forced sale would substantially affect Smith's property interest in Imperial Oil: with either remedy, the likely result would be the (compensated) loss of Smith's ownership interest in Imperial Oil. Thus, both remedies present an immediate risk to Smith's property interest, and, in her absence, Smith's ability to protect her interest is impeded. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). Additionally, as with the Trust Claims, Smith's absence potentially exposes Walters and Imperial Oil to additional litigation if Smith later decides to bring suit.

Accordingly, Smith is a necessary party.

### b.    Step 2: Whether Joinder is Feasible

Having found that Smith is a necessary party to this suit, the Court next considers the feasibility of joining her under Rule 19(a)(2). Joinder is not feasible when a court lacks personal jurisdiction over an absentee party. *Hendricks v. Bank of Am.*, 408 F.3d 1127, 1135 (9th Cir. 2005); *see E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). The Court finds that it cannot join Smith because it likely does not have personal jurisdiction over her.

41

A federal court's exercise of personal jurisdiction over a defendant is governed by two authorities: the Fourteenth Amendment's Due Process Clause and the long-arm statute of the state in which the district court sits. *Briskin v. Shopify, Inc.*, 87 F.4th 404, 411 (9th Cir. 2023).

The Due Process Clause limits a court's jurisdiction over a defendant to (1) general personal jurisdiction, where the defendant is "at home" in the forum state, and (2) specific personal jurisdiction, where a defendant has "such contacts with the forum State that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Court*, 141 S. Ct. 1017, 1024 (2021) (internal quotation marks omitted). The Ninth Circuit has established a three-part test to determine if due process allows a federal court to exercise personal jurisdiction over a non-resident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws:
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).

Under the Montana long-arm statute, Mont. R. Civ. P. 4(b)(1), a Montana court has personal jurisdiction when (1) "a party may be found within the state of Montana and subject to general [personal] jurisdiction," or (2) "the claim for relief may arise from any of the acts listed in [the Montana long-arm statute] and create specific personal jurisdiction for the purpose of litigating that particular claim." *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 17 (Mont. 2015) (internal quotation marks omitted). A court has specific personal jurisdiction over those who personally or through an agent transacted business in Montana; committed a tort in Montana; owned or used property situated in Montana; contracted to insure a person, property, or risk in Montana; entered into a contract for services rendered in Montana or materials furnished by a person in Montana; acted as director, manager, trustee, or other officer of a corporation organized in Montana or having its principal place of business in Montana; or acted as a personal representative of an estate within Montana. *See* Mont. R. Civ. P. 4(b)(1).

The Court finds neither the Due Process Clause nor the Montana long-arm statute grant jurisdiction over Smith. First, Smith is domiciled in Texas, so the Court does not have general personal jurisdiction over her. Second, the Court likely does not have specific personal jurisdiction over Smith, as neither party indicates that Smith has directed any activity, consummated a transaction, or performed an act in Montana, and so she has not invoked the privileges, benefits, and protections of

Montana's laws. Nor does the claim arise from Smith's activities in Montana. Additionally, given Smith's lack of contact with the state of Montana, the Court finds exercising jurisdiction over Smith unreasonable as it would not "comport with fair play and substantial justice." *See Weston*, 780 F.3d at 1211. Third, the Court does not have jurisdiction under any of the prongs of the Montana long-arm statute because, to its knowledge, Smith has not personally or through her agent established a connection with Montana by engaging in any acts listed in the Montana long-arm statute. While she owns shares in a corporation in Imperial Oil, which has its principal place of business in Montana, that connection is insufficient for personal jurisdiction under the Montana long-arm statute. *See* Mont. R. Civ. P. 4(b)(1).

Accordingly, as the Due Process Clause prevents the Court from exercising jurisdiction over Smith, and the Montana long-arm statute fails to grant jurisdiction over her, the Court lacks jurisdiction to join her. *See Hendricks*, 406 F.3d at 1135.

*c.     Step 3: Whether the Absent Party is Indispensable*

Because Smith is a necessary party and the Court does not have jurisdiction to join her, the Court must next consider whether Smith is an indispensable party or whether the action may proceed in her absence. Fed. R. Civ. P. 19(b). At this last step of the joinder analysis, the Court analyzes whether the action may proceed among the existing parties or be dismissed. *Id.* In deciding whether to proceed, the court considers four factors: (1) prejudice to the person that was not joined; (2)

44

whether relief may be shaped to lessen the prejudice; (3) whether, in the person's absence, any judgment rendered would be adequate; and (4) the adequacy of the plaintiff's remedy if the case were dismissed. *Id.*

In looking at the first factor, proceeding in this action in Smith's absence would prejudice her. Smith's shares in Imperial Oil and the Trust properties form the bulk of her inheritance, and, as explained above, Kaiser's proposed remedies place that property at risk.

Looking to the other factors, the Court finds that it can proceed in Smith's absence. First, the Court finds that judgment rendered in Smith's absence will be adequate for Kaiser, who only seeks remedies from Imperial Oil and Walters, such as monetary remedies and the appointment of a receiver. Second, as to the adequacy of relief, if this case were dismissed for failure to join Smith, it is unlikely that Kaiser could bring this case in another jurisdiction: a Montana state court does not have personal jurisdiction over Smith; a North Dakota court already has declared venue to be improper in North Dakota; and, though a Texas court would have general personal jurisdiction over Smith, it would not have jurisdiction over Defendants, who are citizens of Montana and North Dakota and, based on the record, have not conducted any activities that would subject them to the jurisdiction of Texas.

The final factor the Court considers is whether it can shape the relief to lessen the prejudice to Smith. As noted above, Kaiser has requested both legal and

equitable remedies, including the appointment of a receiver, involuntary dissolution of Imperial Oil, sale to a third party, and "any other equitable relief the Court deems just and reasonable under the circumstances." (Doc. 1 ¶ 83; *see* Docs. 74, 86). Defendants claim that the involuntary dissolution of Imperial Oil will prejudice Smith, and that other equitable remedies available under North Dakota law would lessen the prejudice to Smith. (Doc. 115 at 17–18). Kaiser insists that dissolution will not prejudice Smith because North Dakota law protects shareholders and, in a dissolution, provides that any "remaining property and assets" left after paying debts, obligations, liabilities of the corporation are "distributed to . . . shareholders." (Doc. 116 at 9 (citing N.D. Cent. Code § 10-19.1-121(1))). As to the Trust, Kaiser claims that "the only remedy that makes sense in light of the current inactive and depleted status of the Revocable Trust is ordering Defendant Walters to pay money." (*Id.* at 18 (citing N.D. Cent. Code § 59-18-01)).

The Court finds that it can shape the relief to lessen the prejudice to Smith. Involuntary dissolution of a corporation is "an extreme remedy" and one that might severely prejudice Smith in her absence. *See North Dakota ex rel. Heitkamp v. Family Life Servs.*, 616 N.W.2d 826, 837 (N.D. 2000). Smith declares as much, stating she does not want the Court to dissolve the Imperial Oil because she wants to continue receiving the benefits of her shares and dividends. (Doc. 79-3). A court-ordered sale of the corporation in which Smith is a one-third shareholder would

likewise prejudice Smith and therefore be inappropriate in her absence.   Both remedies strip Smith of her property ownership in Imperial Oil, and neither account for the going-concern value of what appears to be a profitable corporation.[10]   (*See* Doc. 1 ¶ 19).   Because Smith is not a party, the Court will not order involuntary dissolution or sale of Imperial Oil.

As to the Shareholder Claims, the Court finds Kaiser's other proposed remedies and those available to the Court under § 10-19.1-115 reduce the risk of prejudice to Smith because they will have a smaller impact on her shares of Imperial Oil.   The Court only will consider the "other equitable remedies" that prejudice Smith the least, such as the appointment of a receiver, forced distributions, and ordering Imperial Oil to buy Kaiser's shares at a fair market value.   *See* N.D. Cent. Code §§ 10-19.1-115(2), (6).

The Court will also shape the relief in the Trust Claims.   As Kaiser has suggested, monetary damages are appropriate for any breach of trust by Walters and will not prejudice Smith because any of her property distributed through the Trust is left intact.   The Court agrees and will therefore limit the relief for the Trust Claims to monetary damages.

---

10. The going-concern value is the "value of a commercial enterprise's assets or of the enterprise itself as an active business with future earning power, as opposed to the liquidation value of the business or of its assets . . . [and] includes, for example, goodwill." *Going-concern value, Black's Law Dictionary* (11th ed. 2019)

For these reasons, the Court finds Smith is a necessary, but not indispensable, party to this action. Because the Court will shape the relief to limit prejudice to Smith, this case may proceed in her absence.

### 3. Merits of Defendants' Motions to Dismiss

Last, the Court addresses Defendants' Motions to Dismiss. Defendants individually move to dismiss Counts I, II, and III as improperly pled derivative claims. (Doc. 17 at 21–24 (Count III); Doc. 20 at 7–13 (Counts I, II, and III)). The arguments in the two motions overlap some, but not entirely. Additionally, Walters moves to dismiss Count VII as barred by the relevant statute of limitations. (Doc. 17 at 21-25). Kaiser filed a combined response. (Doc. 24).

The Court will first address Defendants' motions as to Counts I, II, and III. Then, the Court will address Walters's motion as to Count VII.

### a. Counts I, II, and III

In Counts I, II, and III, Kaiser claims Walters and Imperial Oil breached their duties to her by violating three subsections of § 10-19.1-115. In Count I, Kaiser alleges Walters and Imperial Oil violated subsection (2)(b)(2) by engaging in fraudulent or illegal conduct toward her. (Doc. 122 ¶¶ 47–48). In Count II, she alleges Walters and Imperial Oil violated subsection (2)(b)(3) by engaging in unfairly prejudicial conduct toward her. (*Id.* ¶¶ 52–53). In Count III, Kaiser alleges

Walter and Imperial Oil violated subsection (2)(b)(5) through misapplication and/or waste of corporate assets. (*Id.* ¶¶ 57–58).

Directors and shareholders in closely held corporations owe duties to both the corporation and to shareholders.[11] *Prod. Credit Ass'n of Fargo v. Ista*, 451 N.W.2d 118, 121 (N.D. 1990); *Schumacher v. Schumacher*, 469 N.W.2d 793, 797 (N.D. 1991). When a director or majority shareholder allegedly breaches that duty, the shareholder may seek a remedy. F. Hodge O'Neal, Robert B. Thompson, & Douglas K. Moll, 2 *Oppression of Minority Shareholders and LLC Members* § 7:8 n.25 (Nov. 2023 Update). When the shareholder seeks to "redress an injury, or enforce a duty to" the shareholder, they may bring a direct suit. *Principals of Corp. Governance* § 7.01(b) (1994). When the shareholder brings an action to "redress an injury sustained by, or enforce a duty owed to, the corporation[,]" the shareholder must bring a derivative action on behalf of the corporation. *Id.* § 7.01(a); *see also Furst v. Abelmann*, No. 1:17-cv-085, 2018 WL 11222522, at *4 (D.N.D. Mar. 4, 2018) (finding plaintiffs must file a derivative action when the "only injury to [a plaintiff is] their proportionate share of [a corporation]'s profits"). In cases where a director breaches his duty to both the corporation and the shareholder, the minority shareholder may bring the claim directly. *Danuser v. IDA Mktg. Corp.*, 838 N.W.2d

---

11. Imperial Oil is a closely held corporation. *See* N.D. Cent. Code § 10-19.1–01(11) (defining a "closely held corporation" as "a corporation that does not have more than thirty-five shareholders")..

488, 497 (N.D. 2013) (agreeing with the caselaw of other states that (1) adopts broader fiduciary duties owed to shareholders in closely held corporations and (2) provides shareholders with direct actions for wrongs done to the shareholder as an individual, "regardless of whether the corporation also has a cause of action") (internal citations omitted).

The distinction between direct and derivative suits is consequential because derivative suits have more procedural requirements and protections for the parties: in federal court, plaintiffs must plead derivative claims under the higher pleading standard in Rule 23.1. Fed. R. Civ. P. 23.1.

Defendants argue that Kaiser must bring her claims under § 10-19.1-115 derivatively. (Doc. 20 at 6). They assert that because any "relief acquired" for Counts I, II, and III "benefits" Imperial Oil, not Kaiser individually, they are properly classified as derivative claims. (*Id.* at 2). They argue that, as derivative claims, Counts I, II, and III are subject to the heightened pleading requirements under Federal Rule of Procedure 23.1, and, because they fail to meet the heightened requirements, the Court should dismiss those Counts under Rule 12(b)(6). (*Id.*).

Kaiser responds that her corporate claims are direct, not derivative, and that Walters was the only shareholder who "receive[d] any economic benefit" from Imperial Oil. (Doc. 24 at 16–17). Any suggestion that the corporation and all nonvoting shareholders suffer the same injury is "absurd" because two of Imperial's

non-voting shareholders—Kaiser and Smith—are beholden to the actions of the third—Walters—who owns 100% of the voting stock. (*Id.*) Kaiser argues that this is a "freeze out" case, where the controlling shareholder in a close corporation—Walters—denies a minority shareholder—Kaiser—the economic benefit of ownership. (*Id.* at 19). In freeze out cases, Kaiser asserts, the North Dakota Supreme Court has construed North Dakota's Century Code to allow direct actions by individual shareholders. (*Id.* at 19–20 (citing *Danuser*, 838 N.W.2d at 497–98)). Alternatively, Kaiser argues that, even if her claims are derivative, North Dakota precedent allows the Court to treat her claim as direct because Imperial Oil is a close corporation. (*Id.* at 20).

Both parties conceive of § 10-19.1-115 as a whole—either claims brought under its authority are either direct or derivative. (*See, e.g.,* Doc. 20 at 11; Doc. 24 at 15–17). This approach is precluded by the text of § 10-19.1-115 and by persuasive caselaw. The subsections of § 10-19.1-115 authorize several remedies to address a variety of violations, and each Count claims a violation of a different subsection. *See Wessin v. Archives Corp.*, 592 N.W.2d 460, 465 (Minn. 1999) (explaining that "proper analysis of the complaint" must be performed to determine whether a claim under Minn. Stat. § 302A.751 is direct or derivative); *PJ Acquisition Corp v. Skoglund*, 453 N.W.2d 1, 6 (Minn. 1990) (explaining that not all actions under the Minnesota's Business Corporations Act are direct, and courts should engage in

traditional analysis to determine whether a suit is derivative").[12]  Accordingly, the

Court will address each Count individually.

The Court first finds that Count I may be brought as a direct claim.  Kaiser

alleges that Walters's fraudulent and illegal actions toward the minority shareholders

violate § 10-19.1-115(2)(b)(2). (Doc. 122 ¶¶ 47–48).  Section 10-19.1-115(2)(b)(2)

reads:

> A court may grant any equitable relief it deems just and reasonable in
> the circumstances or may dissolve a corporation and liquidate its assets
> and business . . . [i]n an action by a shareholder when it is established
> that . . . [t]he directors or those in control of the corporation have acted
> fraudulently or illegally *toward one or more shareholders in their*
> *capacities as shareholders* or directors of any corporation or as officers
> or employees of a closely held corporation.

§ 10-19.1-115(2)(b)(2) (emphasis added).

Kaiser alleges that Walters engaged in illegal and fraudulent conduct by

retaining excessive cash in violation of IRS regulations and effectively issuing loans

to himself through Imperial Oil. (Doc. 24 at 16–17).  Kaiser claims personal harm:

the millions of dollars in excessive cash on hand in violation of IRS regulations that

Walters should have distributed as dividends to the nonvoting shareholders

(including Kaiser) but did not. (*Id.* ¶¶ 21–22).  She further alleges that Walters acted

illegally or fraudulently toward her by not paying out dividends.

---

12. The North Dakota Supreme Court considers Minnesota decisions under Minn. Stat.
§ 302A.751 persuasive as to questions arising under § 10-19.1-115. *Kortum v. Johnson*, 755
N.W.2d 432, 441 (N.D. 2008).

The Court finds the plain language of (2)(b)(2) allows a minority shareholder to bring a claim against a majority shareholder who acts fraudulently or illegally toward the minority shareholder.  The specific actions contemplated under (2)(b)(2) allow a shareholder—here, Kaiser—to redress an injury or enforce a duty owed to the shareholder.  The fact that Imperial Oil might share some of the harm alleged by Kaiser does not preclude direct suit.  *See Danuser*, 838 N.W.2d at 497.  Thus, an action brought under subsection (2)(b)(2) may be brought as a direct claim.

The Court next finds that Count II, a claim that Walters engaged in unfairly prejudicial conduct toward Kaiser, in violation of § 10-19.1-115(2)(b)(3), may also be brought as a direct claim.

Section 10-19.1-115(2)(b)(3) reads:

> A court may grant any equitable relief it deems just and reasonable in the circumstances or may dissolve a corporation and liquidate its assets and business . . . [i]n an action by a shareholder when it is established that . . . [t]he directors or those in control of the corporation have acted in a manner unfairly prejudicial *toward one or more shareholders in their capacities as shareholders* or directors of a corporation that is not a publicly held corporation or as officers or employees of a closely held corporation[.]

§ 10-19.1-115(2)(b)(3) (emphasis added).

Kaiser alleges that Walters's actions have unfairly prejudiced her. (Doc. 122 ¶ 53).  She contrasts how Walters has benefitted himself through Imperial Oil with his denial of her benefits of ownership in Imperial Oil. (*Id.*).  She points to Walters's high salary, loans issued by Imperial Oil to Walters and companies he owns,

unnecessary perks and benefits, and Imperial Oil paying for the rent in a building Walters owns. (*Id.*). She contrasts this with the way that Walters denied her of the benefits of ownership in Imperial Oil, namely his failure to issue sufficient dividends and to provide her access to corporate documents. (*Id.*)

The Court finds the plain language of § 10-19.1-115(2)(b)(3) allows a minority shareholder to bring a claim against a majority shareholder who acts in a manner unfairly prejudicial the minority shareholder. As in (2)(b)(2), the specific action is directed toward the shareholder, and the harm contemplated under (2)(b)(3) is to the shareholder, not the corporation. The fact that the corporation likely shares some of that harm does not preclude direct suit. *See Danuser*, 838 N.W.2d at 497. Additionally, the North Dakota Supreme Court has allowed claims for unfair prejudice arising out of § 10-19.1-115(2)(b)(3) to proceed as direct claims. *Id.* at 498.

Having found that Counts I and II are direct claims, the Court finds that they are not subject to the higher pleading standard of Rule 23.1 and are properly pled.

As to Count III, Walters's alleged misapplication and waste of corporate funds under subsection (2)(b)(5), the Court finds that any harm suffered by Kaiser is "suffered derivatively through the decreased value" of her ownership interest in Imperial Oil, so this claim is derivative. *See McKay v. Tharaldson*, No. 3:08-cv-113, 2012 WL 13024069, at *3 (D.N.D. Jan. 5, 2012).

While oppression and prejudice directly harm the shareholder, waste and mismanagement are "traditional derivative claims that rightfully belong to the corporation." *Wessin*, 592 N.W.2d at 465. The statutory language in § 10-19.1-115 reflects this distinction. While subsections (2)(b)(2) and (3) specifically contemplate an action directed toward and harm suffered by a minority shareholder, the language of (2)(b)(5) does not. Instead, subsection (2)(b)(5) allows a shareholder to bring an action "when it is established that . . . [t]he corporate assets are being misapplied or wasted[.]"

Kaiser alleges that Imperial Oil and Walters wasted or misapplied corporate assets. She provides a litany of examples, including the payment of Walters's high salary, "paying unnecessary perks and benefits," paying an assistant an exorbitant salary, issuing loans on favorable terms to benefit Walters, failing to convert Imperial Oil to an S Corporation, moving Imperial Oil to Montana from North Dakota, failing to detect embezzlement, and issuing loans in violation of the statute of frauds. (Doc. 122 ¶ 58).

Construing the PAC in the light most favorable to Kaiser, the Court finds that the alleged actions constituting waste or misapplication decreased the value of Imperial Oil, and thus constitute harm to Imperial Oil. The Court cannot find, and Kaiser does not explain, how Walters directly harmed Kaiser through his waste or mismanagement of corporate assets. Any injury Kaiser suffered was derivative of

the harm suffered by Imperial Oil. *See Furst*, 2018 WL 11222522, at *4 (finding that "injury flowing through" the corporation to be a derivative claim). Thus, the proper framework for a claim for waste or mismanagement falls within the context of a derivative action.

Having found Count III is a derivative claim, the Court must now decide whether the Court has discretion to allow Kaiser to bring it as a direct claim. *See Schumacher*, 469 N.W.2d at 799.

If a shareholder action against a closely held corporation is derivative, North Dakota law allows a court "in its discretion" to treat the derivative action as a direct action—exempting the corporation from the restrictions of a derivative suit—and order an individual recovery. *Id.* (citing *Principles of Corporations* § 7.01(d)). In determining whether it may exercise this discretion, a court considers whether its action will (1) "unfairly expose the corporation" to a "multiplicity of actions;" (2) "materially prejudice the interests of creditors in the corporation;" or (3) "interfere with a fair distribution of the recovery among all interested persons." *Id.* (internal citations omitted).

The Court finds that the factors in *Schumacher* do not allow the Court to exercise such discretion. While the record does not reference creditors whose interest would be materially prejudiced by this action, the other two *Schumacher* factors persuade the Court that it would be inappropriate to allow Count III to

proceed as a direct claim.  First, this action could "unfairly expose the corporation" to a "multiplicity of actions" because Smith is not a party in this case and could later bring her own suit against Walters and Imperial Oil.  Second, due to Smith's absence from this suit, allowing Kaiser to bring an action for waste might "interfere with a fair distribution of the recovery" among all shareholders[.]"  *See id.*

Accordingly, Kaiser must plead Count III as a derivative claim under the higher pleading standard in Rule 23.1.  *See Towers v. Iger*, 912 F.3d 523, 528 (9th Cir. 2018).

Rule 23.1 requires a complaint in a derivative action to be verified and contain allegations that the plaintiff was a shareholder at the time of the transaction complained of and that the action is not a collusive one to confer jurisdiction the court would otherwise lack.  Fed. R. Civ. P. 23.1(b)(1), (2).  Additionally, in the complaint, the plaintiff must state with particularity their efforts to obtain the desired action from the directors or shareholders, and, if those demands would be futile, provide reasons for not obtaining the action or making the effort.  Fed. R. Civ. P. 23.1(b)(1)–(3); *La. Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1057 (9th Cir. 2016).  The law of the state of incorporation, here North Dakota, governs the

sufficiency of the demand and demand futility.[13]  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 100–101 (1991).

Defendants argue generally that Kaiser fails to meet the pleading standard of Rule 23.1.  First, they assert that her claim is not verified and that she failed to make adequate demand on the Imperial Oil Board.  (Doc. 20 at 11).  They next argue that Kaiser failed to plead or establish demand futility.  (*Id.* at 12).

Kaiser responds that, if the Court must treat her claim as derivative, she has met the requirements of Rule 23.1 because she unsuccessfully made numerous demands on Imperial Oil prior to the commencement of her lawsuit, and that a demand to the Board of Directors prior to beginning a derivative suit would be futile.  (Doc. 24 at 25).  She filed an affidavit of Shannon Street verifying the Complaint (Doc. 25), as well as an affidavit by attorney Randall J. Bakke detailing Kaiser's demands that Walters distribute Imperial Oil's excess cash in the form of dividends.  (Doc. 26).

The Court finds that Kaiser has not met all the pleading requirements of Rule 23.1.

Kaiser meets the first requirement: her Complaint was verified.  A declaration was filed on December 27, 2022, by Shannon Street, Kaiser's daughter, who has

---

13. North Dakota statute and caselaw have not clarified whether North Dakota law recognizes demand futility. *See Kamen*, 500 U.S. at 101 (recognizing that some jurisdictions do not recognize the futility exception to the demand requirement of Rule 23.1).

power of attorney to act for her mother. (Doc. 25). While the affidavit was not filed contemporaneously with the Complaint, the Court finds it "sufficient[ly] complian[t]." *See Pioche Mines Consul., Inc. v. Dolman*, 333 F.2d 257, 265 (9th Cir. 1964).

Second, the Court finds that Kaiser fails to allege that she was a shareholder at the time of all transactions complained of in Count III. Additionally, Kaiser fails to allege sufficient facts for the Court to conclude as much. Kaiser alleges that she owns 33,000 shares of non-voting common stock of Imperial Oil. (Doc. 122 ¶ 1). She also alleges that she has owned her Imperial Oil stock "since 2011." (*Id.* ¶ 26). The Court reads this as a continual ownership after some point in 2011. Because Kaiser does not allege when in 2011 she became a shareholder, the Court will not assume she was a shareholder before December 31, 2011. Kaiser alleges the following occurred since January 1, 2012:

- Imperial Oil paid family members high salaries, 2016–2021 (*Id.* ¶ 13);
- Imperial Oil paid assistant Tammy Wigley a high salary of $400,271, 2021 (*Id.* ¶ 58); and
- Walters enriched himself by using Imperial Oil to finance the purchase of his house, 2019, (*Id.* ¶ 17).

Kaiser alleges the following occurred at an unknown time, beginning in 2011, or before:

- Imperial Oil paid Walters a high salary (2011–2021) (*Id.* ¶ 12);
- Imperial Oil paid unnecessary business perks and benefits (date unknown) (*Id.* ¶ 58);

- Imperial Oil issued loans to Walters's other companies, in violation of the statute of frauds (date unknown) (*Id.* ¶¶ 35);
- Imperial Oil paid rent for office space in a building that Walters owns (date unknown) (*Id.* ¶¶ 59);
- Imperial Oil accumulated excessive retained earnings in violation of IRS regulations and risking an unnecessary penalty (2011–2021) (*Id.* ¶¶ 19, 22);
- Walters failed to convert Imperial Oil to an S corporation (after 2002) (*Id.* ¶ 29);
- Walters moved Imperial Oil's principal office from North Dakota to Montana, which required payment of higher state taxes (2011) (*Id.* ¶ 30);
- Walters failed to detect significant embezzlement to recover stolen assets (2011–2017) (*Id.* ¶ 31); and
- Walters invested excessive cash in accounts earning minimal interest ("since prior to 2011") (*Id.* ¶ 36).

(*Id.* ¶¶ 58–59).

Accordingly, of the 12 allegations supporting her claim for misapplication or waste of corporate assets, only three occurred in their entirety when Kaiser was a shareholder.

Third, the Court finds that Kaiser failed to allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack. Such an allegation is missing from the Complaint, the PAC, and the affidavits.

Fourth, the Court finds that Kaiser failed to make sufficient demand on Walters and, alternatively, failed to plead futility of demand.

Kaiser argues that the Complaint alleges sufficient demand and that the affidavits provide extensive details as to her demands. (Doc. 24 at 23). Defendants

assert that a sufficient demand must (1) identify the alleged wrongdoers, (2) describe the factual basis of the wrongful acts and the harm caused to the corporation, and (3) request remedial relief. (Doc. 20 at 10 (citing *Allright Mo., Inc. v. Billeter*, 829 F.2d 631 (8th Cir. 1987)). Defendants argue that, under this standard, Kaiser's demands for dividends are insufficient to meet the requirements of Rule 23.1 and North Dakota law. (*Id.* at 10–12)

As noted above, Rule 23.1 requires that Kaiser state with particularity her demand on the Board, in this case on Walters, to obtain the desired result, or that she plead that such a demand would have been futile. Fed. R. Civ. P. 23.1(b)(3)(A), (B).

Section 10-19.1 of the North Dakota Century Code does not address what constitutes sufficient demand in derivative actions in close corporations. North Dakota caselaw suggests that a plaintiff in a derivative case has made sufficient demand on the board of the defendant corporation when they ask the board to "bring or do a certain legal matter with reference to the instant action." *Phillips-Van Heusen Corp. v. Shark Bros., Inc.*, 289 N.W.2d 216, 220 (N.D. 1980).[14] The Court finds persuasive that the North Dakota Limited Liability Act, § 10-32.1, outlines a similar requirement: a member makes sufficient demand when they "cause the

---

14.   While North Dakota courts find Minnesota caselaw interpreting Chapter 302A of the Minnesota Code persuasive, *see Kortum*, 755 N.W.2d at 441, in this case, Minnesota has enacted a rule of civil procedure governing derivative actions. *See* Minn. R. Civ. P. 23.09. Accordingly, the Court does not find Minnesota caselaw persuasive when assessing the sufficiency of demand in a derivative case.

company to bring an action to enforce the right, and the member, manager, or board does not bring the action within a reasonable time." N.D. Cent. Code § 10-32.1-34.

The Court finds that Kaiser did not make a sufficient demand before engaging in this action. The affidavit of Kaiser's lawyer and accompanying exhibits show that Kaiser demanded that Imperial Oil immediately distribute as dividends all excess cash and that Imperial Oil give her access to a number of corporate documents. (Doc. 26-1 at 2). In response, Imperial Oil suggested a $750,000 distribution (Doc. 26-4 at 2), which Imperial Oil made on July 29, 2022, and provided Kaiser with corporate documents in compliance with North Dakota Century Code 10-19.1-84. (Doc. 122 ¶ 23; Doc. 26-4 at 2). Kaiser demanded Imperial Oil distribute an additional $14,250,000 in dividends. (Doc. 26-8 at 1). Imperial Oil distributed $6,435,000 in dividends on September 14, 2022. (Doc. 122 ¶ 23). While Kaiser threatened to bring a suit against Walters and Imperial Oil, she never requested that Walters bring suit against the board (himself) on behalf of Imperial Oil, as required by North Dakota caselaw. Thus, Kaiser failed to make sufficient demand under North Dakota law.

Under Rule 23.1, Kaiser is excused from making a demand if she sufficiently pleads demand futility under North Dakota law. The Court finds that she did not plead demand futility.

Kaiser argues that "[i]t would have been futile for Plaintiff to demand that the board of directors (Defendant Walters) move to bring a lawsuit against the corporate officer and shareholder whose conduct is at issue (Defendant Walters)." (Doc. 24 at 25). She asserts two reasons for futility (1) "particularized facts create a reasonable doubt that [Walters] would be disinterested or independent in making a decision on a demand" (*Id.* at 25–26) and (2) Walters is neither "disinterested [n]or independent with respect to allegations of misconduct solely against himself. (*Id.* at 27).

But Kaiser makes these arguments in her response to the Motions to Dismiss, not in her Complaint, in the affidavits filed with her response, nor in the PAC after Defendants alleged that she had not properly pled futility. (*See* Doc. 24 at 25–27; *see also* Docs. 1, 26, 122). Thus, the Court need not address Kaiser's arguments as to why her demands would be futile under North Dakota law because she failed to meet the procedural requirement that she plead futility in the complaint or affidavit.

Accordingly, because Count III is a derivative action and cannot be pled directly under the factors in *Schumacher*, and because Kaiser did not meet the pleading requirements of Federal Rule of Civil Procedure 23.1, the Court grants Defendants' motion to dismiss as to Count III.

### b. Count VII

Walters argues that Count VII of Kaiser's complaint for breach of trust should be dismissed for failure to state a claim because it is barred by the statute of

limitations. (Doc. 17 at 25). He makes a two-prong argument. First, Walters asserts that § 28-01-16 of the North Dakota Century Code applies to Kaiser's claim for breach of trust. (*Id.*). Second, he argues that, under § 28-01-16, actions against trustees must be brought within six years after accruing and that any claim for breach of trust that Kaiser asserts as to the sale of Lillian's home happened between 2011 and 2014. (*Id.*). Thus, any action against Walters as co-trustee is barred by the statute of limitations. (*Id.*).

In response, Kaiser asserts that the relevant statute of limitations is § 59-18-05. (Doc. 24 at 43–44). Under the plain text of § 59-18-05, a beneficiary must file a claim for breach of trust within one year of receiving a report from the trustee disclosing the existence of a such a claim. (*Id.* (citing § 59-18-05(1), (2))). On reply, Walters urges the Court to apply § 28-01-16 because its application is "not preclude[d]" by North Dakota law. (Doc. 28 at 8).

The Court must first determine which statute governs the statute of limitations here. Then the Court will decide whether the applicable statute of limitations bars Kaiser from claiming breach of trust.

The North Dakota Century Code contains two statute of limitation provisions that can govern an action against a trustee for breach of trust. Section 28-01-16 is in the Judicial Procedure, Civil section of the Code and governs actions "upon a liability created by statute . . . when not otherwise expressly provided" and for

actions for "any other injury to the person or rights of another not arising under contract, when not otherwise expressly provided." N.D. Cent Code § 28-01-16(2), (5). Its statute of limitations is six years. § 28-01-16. Section 59-18-05 is in the Trusts, Uses, and Powers section of the Code and provides that a judicial proceeding brought by a beneficiary against a trustee for breach of trust must either be commenced within a year of the trustee sending the beneficiary a report that "adequately disclose[s] the existence of a potential claim for breach of trust[,]" or, if no report is sent, within five years of the "removal, resignation, or death of a trustee; the termination of the beneficiary's interest in the trust; or the termination of the trust." § 59-18-05(1),(3). The North Dakota Supreme Court has not decided whether § 28-01-16 or § 59-18-05 control in an action for breach of trust.[15]

Three principles of statutory construction persuade the Court to apply § 59-18-05(3). First, if the "statutory text is plain and unambiguous", it "must [be] appl[ied] according to its terms." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009). Second, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019). Third, when two statutes conflict, the specific governs the general, as

---

15. In the only case where the North Dakota Supreme Court considered § 28-01-16 and § 59-18-05(3), the Court did not consider the question of which statute controls in a claim for breach of trust. *Matter of Curtiss A. Hogen Trust B*, 911 N.W.2d 305, 316 (N.D. 2018). It only rejected the argument that the "trustee's claims were barred by the statute of limitations under [] §§ 28-01-16 and 59-18-05(3)." *Id.*

long as the laws are of "equivalent dignity." *Nitro-Lift Techs, L.L.C. v. Howard*, 568 U.S. 17, 21 (2012).

Both § 28-01-16 and § 59-18-05 are plain and unambiguous. A plain reading of § 28-01-16 shows that it functions as a "catchall" statute of limitation to be applied in the absence of another statute "expressly provid[ing]" a statute of limitations. Thus, the language of § 28-01-16 precludes its application if § 59-18-05 applies.

The Court finds § 59-18-05 applies in this case because Kaiser (a beneficiary of the Trust) brought a judicial proceeding against Walters (a trustee of the Trust) for breach of trust. In the absence of a report "adequately disclos[ing] the existence of a potential claim for breach of trust[,]" the provisions of § 59-18-05(3) apply.

Second, in reading § 59-18-05 within the context of the overall statutory scheme, the Court notes that Title 59 of the North Dakota Century Code applies to Trusts, Uses, and Powers. Section 59-18-05 applies specifically to "actions against trustees." As this is an action against a trustee under Title 59, the statute of limitations contained within Title 59 governs.

Third, the Court uses the statute of limitations specific to trusts, § 59-18-05, over the more generic catch-all statute, since the two actions are of equal dignity, namely, they appear within the same code.

Having determined § 59-18-05(3) governs the statute of limitations in Count VII, the Court applies it and finds the statute of limitations has not run on Kaiser's

breach of trust action.  Neither party has alleged that any of the triggering events in § 59-18-05(3) have occurred, so the five years statute of limitations has not started. Kaiser's action against Defendants for breach of trust may continue.

Accordingly, Defendant Walters's Motion to Dismiss for failure to state a claim is denied as to Count VII.

## IV.   Conclusion

IT IS HEREBY ORDERED:

1.    Plaintiff's Motion for Leave to File Amended Complaint and Jury Demand (Doc. 122) is DENIED as to Plaintiff's allegations of fraud, specifically, the allegations of fraud preceding paragraph 47, allegations of fraud in Count I and those in paragraphs 86, 88, 89, 90, and 91, as well as the allegations of deceit, untruthfulness, or misrepresentation in paragraph 86, and GRANTED as to the rest of the PAC.

2.    The operative pleading in this case will be the Second Amended Complaint.  Kaiser shall file a Second Amended Complaint complying with this Order within seven days of the date of this Order.

3.    To avoid prejudice to absent party Carrie Walters Smith, the Court will tailor the available remedies and will not order the involuntary dissolution or forced sale of Imperial Oil.  Accordingly, Kaiser's Motion for Involuntary Dissolution of Imperial Oil of North Dakota (Doc. 86) is DENIED.

4.      Defendant William Walters's Motion to Dismiss (Doc. 16) is GRANTED as to Count III and DENIED as to Count VII.

5.      Defendant Imperial Oil's Motion to Dismiss (Doc. 19) is GRANTED as to Count III and DENIED as to the rest of the motion.

DATED this __14__ day of February, 2024.

_____
SUSAN P. WATTERS
United States District Judge